Joseph J. **ASKLAR**

v.

**HONEYWELL, INC., aka Minneapolis Honeywell, Inc.**

**Civ. No. H–78–353.**

United States District Court, D. Connecticut.

Sept. 30, 1982.

David F. Waters, Sikorsky, Shluger, Atkins & Waters, Hartford, Conn., for plaintiff.

George E. O'Brien, Jr., Tyler, Cooper, Grant, Bowerman & Keefe, New Haven, Conn., for defendant.

## RULING ON MOTIONS OF HELEN ASKLAR FOR SUBSTITUTION, FOR LEAVE TO AMEND THE COMPLAINT, AND FOR PERMISSION TO INTERVENE

CLARIE, Chief Judge.

This action was brought originally by Joseph J. Asklar, a former employee of the defendant Honeywell, Inc., under the Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621–634. While the action was pending, Asklar died. Helen Asklar, the deceased's widow, subsequently obtained formal appointment as Executrix of her husband's estate and now presents three motions to the Court: (1) a motion for substitution, under Fed.R.Civ.P. 25(a); (2) a motion for leave to amend her complaint to reflect her substituted status; and (3) a motion for permissive intervention, under Fed.R.Civ.P. 24(b), to raise her own claim of retaliation by the defendant Honeywell, Inc., in violation of 29 U.S.C. § 623(d). The Court grants Mrs. Asklar's motions for substitution and for leave to amend her complaint to reflect her substitution, but denies her motion for permission intervention.

### Facts

The original plaintiff, Asklar, was employed in various capacities by the defendant Honeywell from September 15, 1945 to August 25, 1976, when he was discharged. At the time of his termination, he was fifty-nine years old and working in a sales capacity, with the title "Sales Engineer Account Executive." Before termination, he earned $338.75 per week, together with additional fringe benefits having a net value of $78.00 per week.

Upon notice of his discharge, Asklar commenced this action, alleging that his termination was the result of a willful, systematic attempt by Honeywell to discriminate against him because of his advanced age and in violation of the ADEA. He also claims that the defendant subsequently withheld Mr. Asklar's retirement pension benefits in retaliation for his prosecution of this suit. Honeywell maintains that it discharged Asklar because of his poor job per-

formance, not because of his age, and that Asklar refused to accept his pension benefits, saying that such conduct would be inconsistent with his cause of action. While the suit was pending, Asklar died suddenly on August 22, 1980. His wife now seeks to be substituted, under Rule 25(a), as Executrix of her husband's estate, to pursue his discrimination claim and the subsequent claim of retaliation. In addition, the wife seeks permission to intervene individually, with her own personal claim of retaliation against Honeywell, alleging that the defendant has conditioned her receipt of survivor's benefits under her husband's pensions on the withdrawal of this suit, in violation of 29 U.S.C. § 623(d). Honeywell represents that it has provided Mrs. Asklar with the application forms to apply for and recover her survivor's benefits, but that she has not yet properly and fully completed and returned them.

The threshold issues for the Court to decide are: (1) whether an action under the ADEA survives the death of the original plaintiff; and (2) whether a person who is not an employee of the defendant employer has standing to assert a claim of retaliation under § 623(d) of the ADEA.

### Discussion

The procedural substitution of parties is governed by Fed.R.Civ.P. 25(a), which provides in pertinent part:

"(1) If a party dies and the claim is not thereby extinguished, the court may order substitution of the proper parties."

■ Rule 25(a) itself does not settle what claims shall survive the death of a party. *Commercial Solvents Corp. v. Jasspon,* 92 F.Supp. 20 (S.D.N.Y.1950).

Whether a claim abates or is subject to revival by a proper party is a question of substantive law and is not answered by the procedural Rule 25(a) alone. Where federal jurisdiction is based on the diversity of citizenship of the parties, it is clear that federal courts must look to state law to determine whether or not a claim survives.[1] In an action based on rights created by federal law, however, the source of substantive law governing the survival of claims is less clear, in the absence of a controlling federal statute or some expression of congressional intent.[2]

This action, under the ADEA, is based upon a federally created right. The ADEA is silent on the issue of whether claims under it survive the death of an original party. Similarly, the provisions of the Fair Labor Standards Act on which the ADEA relies for its enforcement are silent.[3] In the absence of statutory guidance the question is what source of law governs survival?

■ Contrary to the parties' seeming agreement that state law controls in the face of congressional silence,[4] it is clear from the case law and from basic principles of federalism that in a federal question case, as here, federal law and federal decisions, rather than state law, determine whether an action survives. *Schreiber v. Sharpless,* 110 U.S. 76, 28 L.Ed. 65 (1884) (action to recover penalties for infringement of a copyright) ("State statutes can have no effect on suits in the courts of the United States for the recovery of penalties imposed by an act of Congress"); *Smith v. No. 2 Galesburg Crown Finance Corp.,* 615 F.2d 407 (7th Cir. 1980) (Truth-in-Lending Act claim) ("the survival question must properly be determined as a matter of federal, not state, law . . . . We find no basis

---

**1.** Rules of Decision Act, 28 U.S.C. § 1652. *See generally* C. Wright & A. Miller, Federal Practice and Procedure § 1952 (1972); 3B J. Moore & J. Kennedy, Moore's Federal Practice ¶ 25.04.

**2.** Congress has occasionally spoken to the issue of survival in creating a federal right of action. *See, e.g.,* 45 U.S.C. § 59 (survival of an action under the Federal Employers' Liability Act); 28 U.S.C. § 2404 (action for damages brought by the United States survives defendant's death). *See also Robertson v. Wegmann,* 436 U.S. 584,

98 S.Ct. 1991, 56 L.Ed.2d 554 (1977) (42 U.S.C. § 1988 determines the survival of civil rights claims).

**3.** 29 U.S.C. § 626(b).

**4.** The parties also agree that under Connecticut's very broad survival statute, Conn.Gen. Stat. § 52–599, Joseph Asklar's claim survives, provided substitution is properly made.

for turning to state law in resolving this question."); *Heikkila v. Barber,* 308 F.2d 558 (9th Cir. 1962) (contempt action under 18 U.S.C. §§ 401, 402) ("whether or not such a claim, based upon federal law, survives the death of a claimant, is a question of federal law exclusively. State statutes providing for survival of actions or claims have no application"); *Bowles v. Farmers Nat. Bank,* 147 F.2d 425 (6th Cir. 1945) (action for violation of federal price controls) ("question of the survival of the action, which did not exist at common law and is purely the creature of congressional enactment, is not governed by state statutes of survival."); *Sullivan v. Associated Billposters and Distributors,* 6 F.2d 1000 (2d Cir. 1925) (anti-trust suit for damages) ("statutes of a state are plainly without application to cases which originate under an act of Congress."). While some cases have found it appropriate to consider state law as general guidance, *Mitchell v. Lancaster Milk Co.,* 185 F.Supp. 66 (M.D.Pa.1960); *Fletcher v. Grinnell Bros.,* 64 F.Supp. 778 (E.D.Mich.1946), the question of survival of a federal statutory cause of action, in the absence of a statutory directive, is fundamentally a question of federal common law. *James v. Home Construction Co.,* 621 F.2d 727, 729 (5th Cir. 1980); *Smith v. No. 2 Galesburg Crown Finance Corp., supra,* 615 F.2d at 414. In deciding whether a federal claim survives, "the federal courts are entitled to apply the proper rules of federal law under their own standards", *Bowles v. Farmers Nat. Bank, supra,* 147 F.2d at 430.

Those standards have been most clearly summarized in a recent Fifth Circuit decision, *James v. Home Construction Co.,* 621 F.2d 727 (5th Cir. 1980). Federal common law has long adopted the traditional rule that actions for penalties do not survive the death of a party. *E.g., Huntington v. Attrill,* 146 U.S. 657, 13 S.Ct. 224, 36 L.Ed. 1123 (1882); *Schreiber v. Sharpless,* 110 U.S. 76, 28 L.Ed. 65 (1884). To determine whether a particular statutory provision is penal in

nature, the court in *Home Construction* employed a three-point analysis, articulated in *Murphy v. Household Finance Corp.,* 560 F.2d 206 (6th Cir. 1977);

(a) whether the purpose of the action is to redress individual wrongs or wrongs to the public;

(b) whether the recovery runs to the individual or the public;

(c) whether the recovery is disproportionate to the harm suffered.

This is the analysis used in *Ricca v. United Press International,* 28 FEP 1817 (S.D. N.Y. June 8, 1982), apparently the only case to have decided the issue of survival of an ADEA claim.[5] Finding that the ADEA itself is silent on the issue and that federal common law is the proper source for decision, the court applied the *Home Construction* analysis to determine if the ADEA action was penal. It found that one of the primary purposes of the ADEA is to redress individual wrongs, that recovery in the form of damages obviously runs to the individual, and that recovery is to be based on demonstrated loss and thus is not disproportionate to the harm suffered. For these reasons, the court concluded that an ADEA action is not penal in nature and it held that the deceased employee's action survived his death.

This Court adopts the federal common law standards of survival as articulated by *Home Construction* and agrees with the *Ricca* court's application of them to an ADEA action. While the ADEA does provide for liquidated damages, equal in amount to the actual lost compensation, in cases of wilful violations of its provisions, 29 U.S.C. § 623(b), its primary purpose is to compensate, and where appropriate reinstate, individuals who have suffered employment discrimination because of their advanced age. *Rodriguez v. Taylor,* 569 F.2d 1231, 1238 (3rd Cir. 1977) ("The make whole standard of relief should be the

---

**5.** In *Rogers v. Exxon Research & Engineering Co.,* 550 F.2d 834 (3rd Cir. 1977), an executrix brought an ADEA action. The issue of whether the original plaintiff's ADEA claim survived his death apparently was not raised in or addressed by either the Court of Appeals or the District Court.

touchstone ... in fashioning both legal and equitable remedies in [ADEA] cases."); *E.E.O.C. Allegheny County,* 519 F.Supp. 1328, 1336–7 (W.D.Pa.1981) ("The paramount concern in fashioning relief under ADEA is to recompense the victim .... The purpose of the statute is to make whole the victims of discrimination.") The ADEA is "remedial and humanitarian legislation." *Moses v. Falstaff Brewing Corp.,* 525 F.2d 92, 93 (8th Cir. 1975). An action under the ADEA is not penal in nature. Accordingly, the Court finds that Joseph Asklar's ADEA discrimination claim survived his death in August, 1980, and was subject to revival by his legal representative.

The defendant Honeywell next argues that even if the action here is *subject* to revival, Mrs. Asklar has failed to comply with the state law requirements concerning the filing of a timely motion for substitution, and therefore substitution must be denied. It contends that Conn.Gen.Stat. § 52–599 requires that the estate move for substitution within six months of the original plaintiff's death, and that Mrs. Asklar failed to comply with this statutory limitation.

■ The defendant is incorrect in assuming that state law governs procedures in this action. Rule 25 is a valid rule of federal procedure. *Iovino v. Waterson,* 274 F.2d 41 (2d Cir. 1959) *cert. denied sub nom Carlin v. Iovino,* 362 U.S. 949, 80 S.Ct. 860, 4 L.Ed.2d 867 (1960). In an action based on federal substantive law,[6] as here, Rule 25(a) time limitations for substitution control over inconsistent state statutes. *Downie v. Pritchard,* 309 F.2d 634 (8th Cir. 1962); *Lamb v. United Security Life Co.,* 59 F.R.D. 44 (S.D. Iowa 1973). Rule 25(a) requires that a motion for substitution be made "not

later than 90 days after the death is suggested upon the record," and Mrs. Asklar has complied with this requirement.

Accordingly, because Joseph Asklar's ADEA claim survives his death and because his legal representative, Mrs. Asklar, has met the requirements of Rule 25(a), the Court grants her motion for substitution. Similarly, the Court grants her motion for leave to amend her complaint to reflect her substituted status.

■ Mrs. Asklar has also moved for permission to intervene in this action, to bring her own personal claim of retaliation by the defendant, in violation of 29 U.S.C. § 623(d). That section states:

"(d) It shall be unlawful for an employer to discriminate against any of *his employees or applicants for employment,* for an employment agency to discriminate against any individual, or for a labor organization to discriminate against any member thereof or applicant for membership, because *such individual,* member or applicant for membership has opposed any practice made unlawful by this section, or because such individual, member or applicant for membership has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or litigation under this chapter." (Emphasis added).

Standing to sue, under the nearly identical retaliation provision of Title VII, 42 U.S.C. § 2000e–3(a), has logically been extended to former employees, *e.g., Pantchenko v. C. B. Dolge Co.,* 581 F.2d 1052 (2d Cir. 1978). Similarly, the protection of the Title VII retaliation provision has been extended to third party reprisals. In *De Medina v. Reinhardt,* 444 F.Supp. 573 (D.D.C.1978) the court permitted an employee to assert a

---

6. It is probably also true, following the principles of *Hanna v. Plumer,* 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965), and *Walker v. Armco Steel Corp.,* 446 U.S. 740, 100 S.Ct. 1978, 64 L.Ed.2d 659 (1980), that even in diversity actions, Rule 25(a) time limitations control over inconsistent state statutes. At least one court has so held. *Boggs v. Blue Diamond Coal Co.,* 497 F.Supp. 1105 (E.D.Ky.1980). *See* 3B J. Moore & J. Kennedy, Moore's Federal Practice ¶ 25.04(3), 25–41 ("[the time requirements of

Rule 25(a) ] apply in the same way whether the federal court's jurisdiction in a particular case is based on diversity, a federal question, or an admiralty or maritime matter."). *Cf. Iovino v. Waterson,* 274 F.2d 41 (2d Cir. 1959) *cert. denied sub nom Carlin v. Iovino,* 362 U.S. 949, 80 S.Ct. 860, 4 L.Ed.2d 867 (1960) (non-resident representative permitted, contrary to state law, in question of substitution procedure in a diversity case).

retaliation claim based on allegations that the retaliation against her was motivated as a reprisal for her husband's protected anti-discrimination activities. Even in this claim under the retaliation provision, the action was brought by an *employee.* No court has extended the scope of a retaliation provision beyond the bounds of an employer-employee relationship. *See* B. Schlei & P. Grossman, Employment Discrimination Law 838 (1976). *See also, id.* at 416 n. 2. The legislative history does not indicate any intent contrary to the plain meaning of the ADEA retaliation provision. Mrs. Asklar has never been an employee or an applicant for employment at Honeywell, nor is there any claim that she has been denied employment with the defendant because of retaliatory motivation. Accordingly, the Court finds that Mrs. Asklar has no standing to sue under § 623(d) of the ADEA.

Nor is the Court persuaded that Mrs. Asklar can "opt-in" to this action under the provisions of the Fair Labor Standards Act, especially 29 U.S.C. § 216(b), on which the ADEA relies for its enforcement. That section states in pertinent part:

> "An action to recover the liability prescribed ... may be maintained ... by any one or more *employees* for and in behalf of himself or themselves and other *employees* similarly situated. No *employee* shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party." (Emphasis added).

The plain meaning of the statute is that an employer-employee relationship must exist or have existed at some time. Mrs. Asklar has had no such relationship with Honeywell.

For these reasons, the Court finds that Mrs. Asklar has no standing to bring her own personal retaliation claim under the ADEA. The Court denies her motion for permission to intervene.

SO ORDERED.