**Ruth ESTWICK, Plaintiff,**

v.

**U.S.AIR SHUTTLE, Defendant.**

**No. CV–94–2851 (CPS).**

United States District Court,
E.D. New York.

Dec. 9, 1996.

Ethel Fitzgerald, Brooklyn, NY, Ruth Estwick, Flushing, NY, for plaintiff.

Sean A. Molloy, New York City, for defendant.

## MEMORANDUM AND ORDER

SIFTON, Chief Judge.

Plaintiff Ruth Estwick is the widow of Earl Estwick and administratrix of his estate. Mrs. Estwick brings this suit against her husband's former employer pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–2 ("Title VII"); the Age Discrimination in Employment Act, 29 U.S.C. § 621 ("ADEA"); and the Americans with Disabilities Act, 42 U.S.C. § 12101 ("ADA"). Defendant USAir Shuttle moves for summary judgment on the grounds that the plaintiff lacks standing, that she has failed to exhaust administrative remedies, that the action did not survive her husband's death, for failure to allege the elements of an action under 42 U.S.C. § 1983 and for failure to raise a triable issue of fact under Title VII, the ADA, or the ADEA. For the reasons stated below, the motion is granted in part and denied in part.

## BACKGROUND

The following statement of facts is taken from documentary evidence submitted by the parties and the transcript of Mrs. Estwick's deposition taken during October and November 1995. Mrs. Estwick was at that time recovering from brain surgery for a subdural hematoma and evidenced significant confusion during the deposition. Moreover, it appears from the transcript that she had little personal knowledge of the underlying events. Although depositions and affidavits from supervisors and co-workers of the deceased would have been preferable, both plaintiff and defendant have chosen to rely on a record that is, to put it mildly, skeletal. The facts are largely undisputed; however, relevant disputes are noted.

Earl Estwick was employed by USAir Shuttle (the "Shuttle") as a shift manager at LaGuardia Airport from September 1, 1989 until he was laid off on September 10, 1992.[1] Prior to working at the Shuttle, Mr. Estwick worked for Pan American Airways from 1959 to his retirement in 1988. Mr. Estwick was a black male, suffering from prostate cancer, who, at the time he was laid off, was two months short of his 63rd birthday.

The quality of Mr. Estwick's work with the Shuttle is in dispute. Defendant has submitted one letter from a supervisor named Art Calvo reprimanding Estwick for letting his shift get "out of control" on August 5, 1990, and a letter from a customer complaining

---

1. The Shuttle was at one point owned by Eastern Airlines, then sold to Donald Trump at which point it became the Trump Shuttle. When the Trump Shuttle could no longer meet its obligations, it was transferred to its creditors and subsequently sold to USAir. Although the parties do not state when these transfers took place, the Shuttle was apparently owned by Trump when Mr. Estwick began his employment. By the time he was laid off, it was owned by USAir.

about Mr. Estwick's conduct when her flight was delayed in April 1992. The plaintiff has submitted four memoranda from Mr. Estwick's personnel file complimenting his job performance or referring to compliments from customers.

During 1992 and 1993, the Shuttle reduced staff from 1,004 employees to 761 employees. As part of the staff reduction, Shuttle management decided in late 1992 to eliminate two LaGuardia shift managers. According to the affidavit of Terry Hallcom, President and Chief Executive Officer of the Shuttle, the decision was made based on the employment dates and recent merit increases of all shift managers. Mr. Estwick, who is black, and another white employee, Fred Trumsdorff, were laid off. Estwick was at that time the most junior shift manager in point of seniority and had received a 5% pay increase, which, along with Trumsdorff's 5% increase was the lowest of any other shift manager.[2]

On October 7, 1992, Mr. Estwick wrote Hallcom a letter complaining that his final paycheck did not compensate him for accrued overtime or return time[3] and holidays worked although several others had been so compensated. Patricia Evers, USAir's Director of Compensation and Benefits, responded by letter dated October 26, 1992, that the Shuttle's policy was to compensate management employees for overtime solely by compensatory time off, not pay. Evers also stated that the Shuttle did not allow employees to carry over holidays from one year to the next. She wrote that Mr. Estwick had been paid for deferred holidays accrued during 1992 with his final paycheck. Finally, Evers stated that no management employee had ever received pay for unused compensatory time or holidays.

On June 18, 1993, Mr. Estwick filed a charge of discrimination based on age, race, and disability with the New York State Division of Human Rights and the Equal Employment Opportunity Commission. On April 21, 1994, after Mr. Estwick's death

from prostate cancer on September 20, 1993, the EEOC issued a no probable cause determination.

Mr. Estwick's widow Ruth commenced this suit *pro se* as executrix of his estate against the Shuttle on June 16, 1994. At a December 2, 1994 status conference before Magistrate Go, plaintiff requested, and was granted, time to obtain counsel. Plaintiff's attorney filed an amended complaint on March 2, 1995, in Mrs. Estwick's name as administratrix of Mr. Estwick's estate. Mrs. Estwick was appointed administratrix of his estate on January 25, 1995.

### DISCUSSION

Defendant USAir Shuttle moves for summary judgment on the grounds that the plaintiff lacks standing, that she has failed to exhaust administrative remedies, that the action did not survive her husband's death, that she has failed to allege the elements of an action under 42 U.S.C. § 1983 and for failure to raise a triable issue of fact under Title VII, the ADA, or the ADEA. Although the defendant has styled this as a summary judgment motion, the challenges with respect to standing, failure to exhaust administrative remedies, survival, and insufficiency of the § 1983 claim are addressed to the legal sufficiency of the complaint under Federal Rule of Civil Procedure 12(b)(6). The Court considers these claims before turning to the cross-motions for summary judgment with respect to the merits of the Title VII, ADEA and ADA causes of action.

A motion to dismiss pursuant to Rule 12(b)(6) should be granted only if it "appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Cohen v. Koenig*, 25 F.3d 1168, 1172 (2d Cir.1994) (quoting *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957)). In considering a motion to dismiss, the court must accept as true all factual allegations presented in the

---

**2.** Trumsdorff, a 58–year old white male, was the third most junior. The second most junior shift manager was hired only two months after Trumsdorff and had received an 8% merit pay increase compared to Trumsdorff's 5%.

**3.** Neither party has made the distinction between these two expressions, if any, clear. The terms appear to be interchangeable and represent time worked in excess of an eight-hour day.

complaint. *Bio–Technology Gen. Corp. v. Genentech, Inc.,* 886 F.Supp. 377, 380 (S.D.N.Y.1995). "The court's function on a Rule 12(b)(6) motion is not to weigh the evidence that might be presented at trial but merely to determine whether the complaint itself is legally sufficient." *Id.* (quoting *Goldman v. Belden,* 754 F.2d 1059, 1067 (2d Cir. 1985)).

### Survival of Actions Under Title VII, ADA and ADEA

■ The defendant contends that these causes of action must be dismissed because the actions did not survive Mr. Estwick's death. Absent some specific direction by Congress, whether an action created by federal statutory law survives the death of the plaintiff is a matter of federal common law. *Asklar v. Honeywell, Inc.,* 95 F.R.D. 419 (D.Conn.1982); *see also Khan v. Grotnes Metalforming Systems, Inc.,* 679 F.Supp. 751 (N.D.Ill.1988); *Smith v. No. 2 Galesburg Crown Finance Corp.,* 615 F.2d 407 (7th Cir.1980), *rev'd on other grounds sub nom. Pridegon v. Gates Credit Union,* 683 F.2d 182 (7th Cir.1982).

■ Federal common law has long recognized that actions which are penal in nature do not survive the death of a party. Because the ADEA, ADA and Title VII are silent as to whether a cause of action survives a plaintiff's death, the question is whether the statutes are penal. *Huntington v. Attrill,* 146 U.S. 657, 13 S.Ct. 224, 36 L.Ed. 1123 (1892). To determine whether a particular statute is penal, courts look to (a) whether the purpose of the action is to redress individual wrongs or wrongs to the public; (b) whether the recovery runs to the individual or the public; and (c) whether the recovery is disproportionate to the harm suffered. *Murphy v. Household Finance Corp.,* 560 F.2d 206 (6th Cir.1977).

In this case, each of the statutes has been held to be remedial in nature. *See Asklar,* 95 F.R.D. at 423 (damages under ADEA

intended to compensate individual wrongs, recovery runs to individual and is not disproportionate to the harm suffered); *Khan,* 679 F.Supp. at 755 (ADEA and Title VII are remedial, not penal, statutes). *But see Smith v. Department of Human Services,* 876 F.2d 832, 834 (10th Cir.1989) (ADEA claim solely for liquidated damages does not survive).

■ Plaintiff also invokes the pendent jurisdiction of this Court to entertain a claim for discrimination under New York's Executive Law § 296(3–a)(a). Survival of actions in New York is governed by the Estates Powers and Trust Law 11–3.2, which allows the personal representative of a decedent to prosecute or continue an action "but punitive damages shall not be awarded nor penalties adjudged in any such action brought to recover damages for personal injury." New York courts have interpreted this act to apply to complaints alleging discrimination on grounds of age, sex, and national origin under Exec. Law § 296(.3–a)(a). *See Mendoza v. State Division of Human Rights,* 74 A.D.2d 508, 424 N.Y.S.2d 447 (1st Dept.1980).

■ Plaintiff has asked for compensatory damages in the amount of $1 million and punitive damages in the amount of $1 million. The punitive damages are plainly penal and must be dismissed under either federal or state law. The compensatory damage claims, however, remain unaffected by the plaintiff's death insofar as they are allowable under the statutes. Accordingly, the punitive damage claims are dismissed.[4]

### Standing

■ Even if the actions survive Mr. Estwick's death, the defendant argues that they must be dismissed because the plaintiff is not a proper party and lacks standing. Mrs. Estwick has brought this suit as "the executrix of the estate of EARL L. ESTWICK."

---

**4.** Because this Court finds that actions for punitive damages did not survive Mr. Estwick's death, it does not consider defendant's alternate argument, that the statutes under which plaintiff has brought this action do not permit the recovery of punitive damages. Notwithstanding plaintiff's argument that the punitive damages are allowed under New York's Executive Law, the above discussion makes clear that New York law disallows punitive damages as of Mr. Estwick's death.

Federal Rule of Civil Procedure 17(a) provides:

> Every action shall be presented in the name of the real party in interest. An executor [or] administrator ... may sue in that person's own name without joining the party for whose benefit the action is brought; ... [n]o action shall be dismissed on the ground that it is not prosecuted in the name of the real party in interest until a reasonable time has been allowed after objection for ratification of commencement of the action by, or joinder or substitution of, the real party in interest.

Therefore, the fact that the estate has not been joined as a party does not bar this suit. However, the defendant contends that Mrs. Estwick could not have brought an action prior to being named as her husband's administratrix and that this deficiency could not have been cured by her subsequent appointment as administratrix.

Not only has the defendant cited no case law to support its contention that any standing deficiency was not cured by Mrs. Estwick's appointment as administratrix, such a result would be contrary to the liberal policy underlying the Federal Rules of Civil Procedure.

Given the fact that the plaintiff in this case was initially proceeding *pro se* and the clear federal preference for resolving disputes on the merits, this Court declines to enter judgment against the plaintiff on this basis. *See Foman v. Davis,* 371 U.S. 178, 181, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962) (spirit of Federal Rules precludes avoiding "decisions on the merits ... on the basis of mere technicalities").

### Failure to Exhaust Administrative Remedies

 The defendant makes substantially the same arguments with respect to Mrs. Estwick's alleged failure to exhaust administrative remedies under Title VII. Filing a timely charge of discrimination with the EEOC or a qualified state agency is a prerequisite to commencing an action in federal district court. *See Moche v. City University of New York,* 781 F.Supp. 160, 167 (E.D.N.Y. 1992), *aff'd,* 999 F.2d 538 (1993). Defendant argues that, since Mrs. Estwick has not filed a complaint with the EEOC and did not move to substitute herself in her husband's complaint before the EEOC, she has not received the right to sue letter that is requisite to this action.

As the above discussion makes clear, Mrs. Estwick is bringing suit on behalf of her husband's estate. Accordingly, only the estate was required to receive a right to sue letter. It is undisputed that the letter was issued on April 21, 1994.

### Failure to Exhaust Internal Administrative Remedies

 Defendant next argues that the plaintiff's claim must be dismissed because of Mr. Estwick's failure to avail himself of the Shuttle's internal grievance procedures. The parties dispute whether Mr. Estwick had knowledge of the grievance procedures and whether the procedures were available. This dispute, however, is irrelevant since there is no requirement that a plaintiff must exhaust corporate administrative remedies before seeking assistance from the EEOC or the courts. *Philippeaux v. Fashion Institute of Technology,* 1994 WL 263447 (S.D.N.Y.1994) (*citing EEOC v. Hacienda Hotel,* 881 F.2d 1504, 1516 (9th Cir.1989)).

The case cited by the defendant for this proposition, *Alvaro v. Rollway Bearing,* 1995 WL 506751 (N.D.N.Y.1995), is readily distinguishable. The plaintiff in *Rollway* failed to avail himself of remedies available under his collective bargaining agreement before bringing an action under the National Labor Relations Act. The case did not implicate any of the statutes under which this plaintiff seeks relief.

### Failure to State a Cause of Action under § 1983

 In each of the three counts of the amended complaint, plaintiff makes reference to a deprivation of constitutional rights under the fifth and fourteenth amendments. Defendant has interpreted the pleadings to allege a cause of action under 42 U.S.C. § 1983 and moved to dismiss them for failure to state a cause of action. Plaintiff's memoran-

dum of law on this point is wholly unresponsive. She argues that,

> [t]o the extent that defendant's action in terminating the employment of Mr. Estwick violates the substantive provisions of Title VII of the Civil Rights Act of 1964 and the Civil Rights Act of 1991, plaintiff has been denied the relief and due process [sic].

If plaintiff's argument is that a violation of Title VII is, by definition, a denial of due process, then she is plainly not seeking independent relief under the Constitution, and the challenged pleadings are mere surplusage.

■ To the extent that plaintiff is arguing that she is entitled to independent relief under the Fifth and Fourteenth Amendments, her claim is devoid of the allegations necessary to support such a claim. To recover under 42 U.S.C. § 1983, the plaintiff must show that the defendant, (1) acting under color of state law, (2) deprived him of a federal right. *Gomez v. Toledo,* 446 U.S. 635, 640, 100 S.Ct. 1920, 1923–24, 64 L.Ed.2d 572 (1980). A private defendant may be held liable under § 1983 only if he was a "willful participant in joint activity with the state or its agents." *Spear v. Town of West Hartford,* 954 F.2d 63, 68 (2d Cir.1992) (quoting *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 152, 90 S.Ct. 1598, 1606, 26 L.Ed.2d 142 (1970)). The amended complaint alleges none of these essential elements. Any cause of action based upon § 1983 is therefore dismissed.

### Prima Facie Case under Title VII

Defendant next argues that it is entitled to summary judgment because plaintiff can neither present a *prima facie* case sufficient to shift the production burden to the defendant nor rebut its showing of a nondiscriminatory motivation for Mr. Estwick's termination. Federal Rule of Civil Procedure 56(c) provides that summary judgment must be granted if there is no genuine issue as to any material fact and if the moving party is entitled to judgment as a matter of law. The moving party has the burden of demonstrating the absence of any disputed material facts, and the court must resolve all ambigui-

ties and draw all inferences in favor of the party against whom summary judgment is sought. *See Thompson v. Gjivoje,* 896 F.2d 716, 720 (2d Cir.1990).

The showing needed on summary judgment reflects the burden of proof in the underlying action. The court must consider "the actual quantum and quality of proof" demanded by the underlying cause of action and which party must present such proof. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 254, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986). Therefore, where the ultimate burden of proof is on the nonmoving party, the moving party meets his initial burden for summary judgment by " 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). To survive the motion, the nonmoving party must then "make a showing sufficient to establish the existence of [the challenged] element essential to [that party's] case." *Id.* at 322, 106 S.Ct. at 2552. "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson,* 477 U.S. at 247–48, 106 S.Ct. at 2510. In conclusion, summary judgment is appropriate "[w]hen the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

■ The standards for establishing a claim of racial discrimination under Title VII are not in dispute. The plaintiff bears the initial burden of offering "evidence adequate to create an inference that an employment decision was based on a discriminatory criterion illegal under the Act." *International Brotherhood of Teamsters v. United States,* 431 U.S. 324, 358, 97 S.Ct. 1843, 1866, 52 L.Ed.2d 396 (1977).

■ Where there is no direct evidence of racial discrimination in a termination, a plaintiff may raise an inference of discrimination by adducing evidence that (1) he was in the

protected group, (2) satisfactorily performed his duties, (3) was discharged, (4) under circumstances that give rise to an inference of discrimination. *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981); *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

If the plaintiff produces such evidence, a presumption of discrimination is created which shifts the burden to the defendant to rebut the presumption. The presumption is rebutted if the defendant proffers a legitimate, non-discriminatory explanation for its action. *Burdine,* 450 U.S. at 254–55, 101 S.Ct. at 1094–95. The defendant need not prove that it had no discriminatory motive but simply advance evidence to show that it "acted on a neutral basis." *Lieberman v. Gant,* 630 F.2d 60, 65 (2d Cir.1980).

The burden then shifts to the plaintiff to demonstrate that the "proffered reason was not the true reason for the employment decision." *Burdine,* 450 U.S. at 256, 101 S.Ct. at 1095. Plaintiff must prove "both that the reason was false, and that discrimination was the real reason." *St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 515, 113 S.Ct. 2742, 2752, 125 L.Ed.2d 407 (1993).

According to defendant, the plaintiff has not raised a triable issue with respect to Mr. Estwick's qualifications for the position. The defendant also argues that no evidence suggests that Mr. Estwick was discharged under circumstances giving rise to an inference of discrimination.

The evidence submitted shows that there were conflicting reports about Mr. Estwick's performance. The defendant has presented uncomplimentary letters from his personnel file, an affidavit from the Shuttle's President and CEO who evidences no personal knowledge of Estwick's performance, and a document evidently prepared in contemplation of this litigation showing that Estwick had re-

cently received a lower merit increase than most of his peers. The plaintiff has presented complimentary letters from Mr. Estwick's personnel file at the Shuttle and dozens of commendations from Estwick's career at Pan Am. In sum, the evidence regarding Mr. Estwick's performance of his duties would allow a jury to find that he performed his job satisfactorily.[5]

To show that Mr. Estwick was discharged under circumstances giving rise to an inference of discrimination, the plaintiff has relied on the fact that, although the Shuttle's employee manual states that a performance appraisal would be conducted prior to recommending a merit increase, there are no such appraisals in Mr. Estwick's file. The inference is that performance appraisals and pay raises of white managers were conducted consonant with the employee manual while Mr. Estwick was treated disparately. Based on this evidence, a jury could infer that the employment decisions were made according to impermissible criteria. The conflicting evidence submitted by the parties creates a triable issue of fact that may only be resolved by a jury.

Nevertheless, defendant claims that it has articulated legitimate non-discriminatory motivations for the termination and that plaintiff has not produced any evidence of discriminatory intent. Defendant argues that the termination decision was a combination of the economic realities of the air transportation marketplace and Estwick's comparably poor performance and recent hire date. However, plaintiff correctly notes that the absence of a job description or other criteria by which Estwick's performance could have been measured allow the inference that Estwick was targeted by race and not performance. This argument is aided somewhat by the absence of any performance appraisals in Mr. Estwick's file. *See Gallo v. Prudential Residential Services,* 22 F.3d 1219 (2d Cir.1994) (plaintiff may establish pretext by circum-

---

5. The defendant finds it significant that the letters submitted by plaintiff are dated 1990 and 1991, two years prior to his termination. The defendant urges an inference that Mr. Estwick's performance declined after 1991, therefore earlier letters are "irrelevant." Of course, it could also mean that Mr. Estwick was initially targeted

for disparate treatment in 1991 which culminated in his 1993 termination. If, however, the chronology is as significant as defendant would have the Court believe, it is worth noting that the letter from Art Calvo, on which it relies so heavily to establish Mr. Estwick's incompetence, is dated August 8, 1990.

stantial evidence). Though some evidence in the form of depositions of Estwick's supervisors would have been preferable, the spartan record before the Court allows conflicting inferences about the Shuttle's intent in terminating Mr. Estwick. The question of which inference to draw is a matter for a jury. *Ramseur v. Chase Manhattan Bank*, 865 F.2d 460, 467 (2d Cir.1989). Accordingly, both the plaintiff's and the defendant's motions for summary judgment are denied.

### The ADEA Claim

■ To establish a *prima facie* case of age discrimination under the ADEA, the plaintiff must show that (1) he was in the protected age group, (2) he was qualified for the job, (3) he was discharged, and (4) the discharge occurred under circumstances which give rise to an inference of age discrimination. *Julian v. New York City Transit*, 857 F.Supp. 242, 249 (E.D.N.Y.1994), *aff'd*, 52 F.3d 312 (2d Cir.1995).[6] The same burden-shifting analysis used under Title VII applies to ADEA claims. *Meiri v. Dacon*, 759 F.2d 989 (2d Cir.), *cert. denied*, 474 U.S. 829, 106 S.Ct. 91, 88 L.Ed.2d 74 (1985).

■ According to defendant, plaintiff's ADEA claim suffers from the same deficiencies as her Title VII claim. Defendant's first argument, that plaintiff has not established that he was qualified for the position, has already been considered and rejected. Defendant next argues that plaintiff's only evidence that Mr. Estwick was replaced by younger, less-qualified employees is Mrs. Estwick's conclusory assertions. A review of defendant's evidence, however, shows that Mr. Estwick was the oldest shift manager. The record also shows that Mr. Estwick had a 30–year career with Pan American as an executive and assistant to the President and

CEO. Although it would have been preferable for plaintiff to have produced evidence regarding the qualifications of the employees who were not laid off, the record shows that a triable issue exists as to whether the Shuttle's motivation for terminating Mr. Estwick was age.

On the other hand, the plaintiff's evidence falls far short of compelling summary judgment in her favor. Accordingly, both the plaintiff's and the defendant's motions for summary judgment are denied.

### ADA Claim

■ Defendant next argues that plaintiff has failed to establish the essential elements of a disability claim under the ADA. When analyzing discrimination claims under the ADA, courts apply the same burden-shifting analysis employed in Title VII actions. *See e.g. Newman v. GHS Osteopathic, Inc.*, 60 F.3d 153, 157–58 (3d Cir.1995); *Heilweil v. Mount Sinai Hospital*, 32 F.3d 718, 721–22 (2d Cir.1994) (applying burden-shifting analysis to handicap discrimination claim under the Rehabilitation Act). Although plaintiffs normally have to prove a *prima facie* case by a preponderance of the evidence, they can survive summary judgment motions by carrying only a *de minimis* burden of proof at this stage. *Chambers v. TRM Copy Centers Corp.*, 43 F.3d 29, 37 (2d Cir.1994). In a case alleging failure to hire based on disability discrimination, the plaintiff must show that

(1) he is a handicapped person within the meaning of the statutes; (2) he is otherwise qualified to perform the duties [of his position]; (3) he was not hired because of his handicap; and (4) that the employer is subject to the statutes.[7]

---

**6.** Defendant insists that a plaintiff in a reduction in work force case, such as this, is also required to prove that "he was qualified to assume another [available] position at the time of the discharge." *Maresco v. Evans Chemetics, Div. of W.R. Grace & Co.*, 964 F.2d 106, 111 (2d Cir. 1992). However, the allegations in that case, refusal to transfer or demotion, are not present on these facts. Plaintiff does not therefore assume the additional burden of demonstrating that Mr. Estwick was qualified to assume a position that was apparently neither offered nor available.

**7.** The Second Circuit has yet to consider the elements of a *prima facie* case with respect to discriminatory discharge under the ADA. However, since a failure to hire implicates essentially the same theories of discrimination as a discriminatory termination, i.e., an unfavorable employment decision, there is no reason to believe that the elements required to establish a *prima facie* case would be materially different in the context of an alleged wrongful termination. Contrary to the plaintiff's position, however, the plaintiff has to establish more than the mere existence of a

*Joyce v. Suffolk County,* 911 F.Supp. 92 (E.D.N.Y.1996). In addition, plaintiff must present some evidence that the employer knew that the plaintiff suffered from a disability. *MacDonald v. Presbyterian Hospital,* 1996 WL 14436 at *1 (S.D.N.Y.1996).

■ Defendant argues that the plaintiff has not shown that Mr. Estwick suffered from a handicap or that the Shuttle discharged him because of the disability.[8] The parties have argued back and forth about whether Mr. Estwick's prostate cancer was a disability within the meaning of the ADA. It is unnecessary to resolve this issue, however, because the plaintiff has presented no proof by which this Court could find that the Shuttle knew he was so afflicted.

Plaintiff has ignored this point in her memorandum of law, devoting herself instead to an extensive, rambling and rather incoherent discussion of whether Mr. Estwick was disabled under the ADA. Plaintiff's sole proof that the Shuttle knew about Mr. Estwick's disability is her deposition testimony.

Q. Did he tell anyone at the Shuttle that he had prostate cancer?

A. That I don't know.

Q. You're not aware of him telling anybody?

A. I don't know. You have to ask his doctor what is all of this is about.

Q. Do you know if Mr. Estwick ever told his supervisor at the Shuttle—

A. I don't know.

. . . . .

Q. Did he ever inform his supervisors at the Shuttle that he had prostate cancer in writing; are there any written documents?

A. I don't know. I don't know.

. . . . .

Q. You testified, I believe, that he never missed work because of the prostate cancer.

A. Never missed a day.

Although Mrs. Estwick was laboring under the aftereffects of neurosurgery at her deposition, it was still incumbent upon her to produce some evidence that the Shuttle knew her husband had prostate cancer.[9] Although the plaintiff can carry this burden on summary judgment by producing a small amount of evidence, she cannot carry it by simply disavowing any knowledge and letting the matter rest. Since plaintiff has failed to establish the elements of a *prima facie* case under the ADA, summary judgment is entered for the defendant on this cause of action.[10]

Accordingly, the defendant's motion to dismiss is granted with respect to the putative claim under § 1983 and the punitive damages. The defendant's summary judgment motion is granted with respect to the ADA claim. The defendant's remaining motions are denied. The plaintiff's cross-motion for summary judgment is denied in its entirety.

SO ORDERED.

disability and that he was qualified for the position.

**8.** Defendant's third alternative argument, that no proof shows that Mr. Estwick was qualified for his position with or without the disability, has been considered and rejected.

**9.** Plaintiff also alluded to, though was not certain about, some difficulty her husband was having in receiving medical benefits from his insurance company. Since the personnel manual states that all claims are submitted to and processed by the insurance company, this does not raise a triable issue with respect to the Shuttle's knowledge of Mr. Estwick's disability.

**10.** This finding renders it unnecessary to consider defendant's mystifying invocation of failure to exhaust administrative remedies under ERISA in an action not predicated on ERISA. In addition, the defendant's argument that plaintiff's ADA complaint is fatally defective for failure to join the Shuttle's insurance company as an indispensable party under ERISA need not be considered.