**Jose L. ACEBAL, et al., Plaintiffs,**

v.

**The UNITED STATES, Defendant.**

**No. 01–47C.**

United States Court of Federal Claims.

May 6, 2004.

Alan Banov, Washington, D.C., for plaintiffs.

Domenique Kirchner, Trial Attorney, Commercial Litigation Branch, Civil Division, Department of Justice, for the United States.

With her on briefs were Peter D. Keisler, Assistant Attorney General, David M. Cohen, Director, Kathryn A. Bleecker, Assistant Director, Robin Suzanne Courtney, Attorney, Bureau of Prisons, of counsel.

## OPINION

BRUGGINK, Judge.

This is an action for overtime pay brought by more than 100 employees of the Bureau of Prisons under the overtime provisions of the Federal Equal Pay Act, 5 U.S.C. §§ 5542, 5544, 5546 (2000) ("FEPA"), and the Fair Labor Standards Act of 1938, as amended, 29 U.S.C §§ 201–216 (2000) ("FLSA"). Four plaintiffs have died since this action commenced. Before the court are plaintiffs' motions pursuant to Rule of the United States Court of Federal Claims ("RCFC") 25(a)(1) to substitute the widows for the deceased plaintiffs. Defendant opposes the motions.

## BACKGROUND

Since commencement of this action on January 21, 2001, four plaintiffs have died.[1] David John Drury died on March 14, 2001, Earl Walter Johnson died on December 25, 2002, Reginald Lewis Ammons died on May 12, 2003, and Arthur Francis Pulford died on July 22, 2003. The remaining plaintiffs have brought motions pursuant to RCFC 25(a) to substitute the widows of the deceased plaintiffs: 1) Marlene K. Drury, administrator, for Mr. Drury; 2) Alicia M. Johnson, special administrator, for Mr. Johnson; 3) Priscilla Ammons, administrator, for Mr. Ammons; 4) Arthur F. Pulford Trust, Mary H. Pulford, trustee, or in the alternative Mary H. Pulford, personal representative, for Mr. Pulford.

Mr. Johnson died without a will, thus his estate did not proceed through probate. Ms. Johnson, in an August 29, 2003 letter submitted to this court, claims to be the sole beneficiary of Mr. Johnson's estate. At the time of his death Mr. Johnson was a resident of Minnesota. His widow continues to be a Minnesota resident. According to a November 12, 2003 letter from Ms. Johnson's attorney to plaintiffs' counsel, it was not necessary under Minnesota law to open a "formal 'probate estate'" in order to transfer Mr. Johnson's assets to Ms. Johnson. On February 20, 2004, the Minnesota District Court for the County of St. Louis authorized Ms. Johnson to represent the decedent, in this case, as special administrator.

At the time of his death Mr. Pulford was a resident of Minnesota. His widow continues to be a Minnesota resident. Mr. Pulford's will designated Ms. Pulford to be the executor of his estate. The will also appoints Ms. Pulford as personal representative of the Arthur F. Pulford Revocable Trust. The will grants her all the "powers, rights and privileges conferred upon a Personal Representative by Sections 524.3–711 and 524.3–715 of the Minnesota Uniform Probate Code." Ms. Pulford has not yet obtained a court order appointing her as personal representative of Mr. Pulford's estate. She asserts that she lacks the means to pay the $600 fee required by the Minnesota Probate Court.

Mr. Ammons and Mr. Drury were residents of Georgia at the time of their deaths. Their widows are also residents of Georgia. In that state, the fiduciary tasked with administration of an estate has certain powers that can be incorporated by reference to the relevant statute. *See* GA. CODE ANN. § 53–12–232 (2002). Included is the power to bring and defend actions and claims in favor of or against the estate.

Mr. Ammons died without a will. Ms. Ammons, in an August 25, 2003 letter presented to the court, claims to be the beneficiary of his life insurance, health insurance, and retirement benefits. Ms. Ammons also has provided this court with letters of administration issued on November 3, 2003 by the probate clerk of Henry County, Georgia. The letters of administration grant Ms. Ammons "full power to collect assets of said decedent ... to do and perform all other duties as such Administrator." The letter

---

1. On June 18, 2003, defendant filed a suggestion of death with respect to three of these plaintiffs: Mr. Drury, Mr. Johnson, and Mr. Ammons. Plaintiffs on September 5, 2003 informed the court of the death of Mr. Pulford and simultaneously moved to substitute the widows of all four deceased employees.

goes on to grant her as administrator all the powers available under section 53–12–232. Included in that section is the power "to compromise, adjust, arbitrate, bring or defend actions on, abandon, or otherwise deal with and settle claims in favor or against the estate or trust as the fiduciary shall deem advisable." *Id.*

On February 17, 2004, the Coweta County Probate Court appointed Ms. Drury administrator of the estate of the decedent, Mr. Drury. She was also granted all the powers contained in section 53–12–232.

Defendant opposes plaintiffs' motion to substitute the widows as personal representatives for the decedents. Although in its briefing it proposes dismissal of decedents' claims, it has not filed motions to dismiss.

## DISCUSSION

RCFC 25(a)(1) states, in relevant part: "If a party dies and the claim is not thereby extinguished, the court may order substitution of the proper parties. The motion for substitution may be made by any party or by the successors or representatives of the deceased party . . . ." RCFC 25(a). Plaintiffs assert in their motions to substitute that the decedents' overtime pay claims did not abate on death and are now part of decedents' estates.

Defendant asserts three grounds in opposition. The first is that the decedents' FEPA claims did not survive their deaths. It does not make this argument with respect to plaintiffs' FLSA claims because defendant takes the position that decedents' claims can only arise under FEPA. Defendant's second and third contentions are that the motions are untimely under both Rule 25 and this court's order of December 19, 2003, in which we established a deadline for the widows to perfect proof of their right to represent the decedents' estates.

■ We will deal with the timeliness issues first. Rule 25 directs that the motion to substitute be made within 90 days after suggestion on the record of the decedent's death. In this case, the suggestions of death were filed on June 18 and September 5, 2003. The motions to substitute were filed on September 5, 2003. Defendant argues that because the motions were not perfected, if at all, until more than 90 days had lapsed, the motions should be denied. We decline to follow this rather draconian suggestion. We believe that the rule contemplates merely that a motion will be filed within 90 days, irrespective of whether it could be contested successfully on the merits. The timeliness requirements of Rule 25 were met.

■ For the same reason we reject defendant's argument that the court should ignore the merits of the motions to substitute because additional support materials were filed beyond the initial deadline set by the court. Having set the deadline, the court is comfortable waiving it in the interests of justice.

■ Two questions remain. The first is whether the causes of action survived the deaths of the plaintiffs. The court may only order substitution of the proper parties if the claim is not extinguished by death. This is because RCFC 25(a)(1) is merely procedural in nature. It does not create a cause of action. Whether a claim abates or can be maintained by the personal representative of the deceased is a question of substantive law. *See Robertson v. Wegmann,* 436 U.S. 584, 587 n. 3, 98 S.Ct. 1991, 56 L.Ed.2d 554 (1978).

As mentioned above, defendant only addresses the question of survival of an action under FEPA. It takes this position, however, because it discounts the merits of decedents' FLSA claims. Short of plaintiffs dropping their alternative claim under the FLSA, however, we cannot resolve the procedural question under Rule 25 by advancing to the merits of their arguments. We therefore must address survival of an action under the FLSA as well.

We note, in addition, that actions under the FLSA serve much the same purpose as those under FEPA. It is therefore noteworthy that at one point in the briefing, defendant appeared to concede that actions under the FLSA survive to the estate of the deceased. *See* Def.'s Sur–Reply, at 9.[2]

**2.** The FLSA applies to both public and private employees. 29 U.S.C. §§ 201—216. FEPA ap-

Neither FEPA nor FLSA include specific language regarding survival of actions. Defendant contends that the absence of such a saving provisions is dispositive of the issue. It begins with the familiar argument that any waiver of sovereign immunity must be unequivocal. This verity, combined with the absence of any specific statutory savings provision, leads defendant to conclude that permitting survival of a cause of action runs afoul of the "no waiver by implication" rule. We disagree. The relevant waiver of sovereign immunity occurred when Congress adopted FEPA and made the FLSA applicable to federal employees. *See El–Sheikh v. United States,* 177 F.3d 1321 (Fed.Cir.1999) (holding that FLSA, as amended, waives sovereign immunity); *Aaron v. United States,* 51 Fed.Cl. 690 (2002) (holding that FEPA constitutes a waiver of sovereign immunity). No further waiver is required for valid claims to survive.

That actions at law could survive the death of a party absent a specific saving provision has long been the rule and was contemplated by the First Congress. *See* Judiciary Act of 1789, 1 Stat. c. 20, § 31; *see also Schreiber v. Sharpless,* 110 U.S. 76, 78, 3 S.Ct. 423, 28 L.Ed. 65 (1884). Nor does Congress' subsequent failure to address abatement mean that it intended statutory claims to abate. *See Cox v. Roth,* 348 U.S. 207, 209, 75 S.Ct. 242, 99 L.Ed. 260 (1955) (holding that despite absence of survival provision in statute, action by Jones Act seaman survives death of defendant); *Bilanow v. United States,* 159 Ct.Cl. 93, 309 F.2d 267 (1962) (holding that suit for wrongful interference with government employment concerns a property right and does not abate upon death); *see also Sinito v. United States Dep't of Justice,* 176

F.3d 512 (D.C.Cir.1999) (holding that FOIA cause of action, despite the absence of a statutory survival provision, survives plaintiff's death); *Mallick v. Int'l Brd. of Elec. Workers,* 814 F.2d 674 (D.C.Cir.1987) (holding that despite absence of survivorship clause, an action under § 201 of the Labor Management Reporting and Disclosure Act, 29 U.S.C. § 431(c), survives death of plaintiff).

In the absence of a specific statutory provision, courts have looked to federal common law to determine whether an action created by federal statute survives the death of a party.[3] *See Schreiber,* 110 U.S. at 80, 3 S.Ct. 423; *Smith v. Dep't of Human Svc.,* 876 F.2d 832, 834 (10th Cir.1989); *Fariss v. Lynchburg Foundry,* 769 F.2d 958, 962 n. 3 (4th Cir.1985); *Asklar v. Honeywell, Inc.,* 95 F.R.D. 419, 422–23 (D.Conn.1982). Different tests have evolved. Some courts characterize the relevant distinction to be between suits to vindicate personal rights and actions which seek to advance a public right. Actions in the nature of a penalty thus abate on death. A cause of action for debt, on the other hand, survives the death of the plaintiff. *See James v. Home Constr. Co.,* 621 F.2d 727, 729 (5th Cir.1980) (holding that action under truth in lending act survived unless it was an action for penalties); *see also Murphy v. Household Finance Corp.,* 560 F.2d 206, 209 (6th Cir.1977) (holding that distinction is between remedial actions, which survive, and penal actions, which abate); *accord Bowles v. Montgomery,* 66 F.Supp. 889 (W.D.Pa.1946).

■ In an action under the Truth in Lending Act, the Fifth Circuit in *James,* looked to

---

plies to federal employees. 5 U.S.C. § 5542. The two acts are *in pari materia* and precedent under one can be relevant in applying the other. *See Agner v. United States,* 8 Cl.Ct. 635, 638 (1985); *see also Baker v. United States,* 218 Ct.Cl. 602, 623, 1978 WL 4180 (1978); *Armstrong v. United States,* 144 Ct.Cl. 659, 661–62, 1959 WL 7586 (1959).

3. Defendant argued in its initial briefs that Georgia and Minnesota law controlled the outcome. This argument was drawn from law developed under 42 U.S.C. § 1983. However, the requirement to apply state law in such proceedings is imposed by statute. *See* 42 U.S.C. § 1988 (stat-

ing actions for civil right violations shall be governed by the "common law, as modified and changed by the constitution and statutes of the State wherein the court having jurisdiction ... is held"). No similar statutory provision governs the present case. As to the substance of state law, moreover, defendant initially took the position that, if the FEPA cause of action is analogous to a contract claim, it survives under Minnesota law. As we explain in the text, many courts have viewed employment claims as contractual in nature, including the Court of Claims. *See Bilanow,* 159 Ct.Cl. at 95, 309 F.2d 267.

three factors in determining whether the cause of action was remedial or penal in nature: 1) whether the purpose of the action was to redress individual wrongs or more general wrongs to the public; 2) whether the recovery runs to the individuals harmed or to the public; 3) whether the recovery was wholly disproportionate to the harm suffered. 621 F.2d at 729. These same criteria have been employed by other courts. *See, e.g., Murphy*, 560 F.2d at 209—11 (holding that an action under Truth in Lending Act, 15 U.S.C. § 1635, survives); *Kilgo v. Bowman Transp., Inc.*, 789 F.2d 859, 876 (11th Cir. 1986) (holding that an action under Title VII, 42 U.S.C. §§ 2000e to 2000e–16, survives under both federal common law and state law); *Bracken v. Harris & Zide, L.L.P.*, 219 F.R.D. 481 (N.D.Ca.2004) (holding that an action under Fair Debt Collection Practices Act, 15 U.S.C. § 1692, survives the death of a party); *Asklar*, 95 F.R.D. at 423 (holding that an action under Age Discrimination in Employment Act, 29 U.S.C §§ 621 to 634, survives under federal common law).

■ A similar distinction developed in overtime pay claims, at least in private sector cases, between actions that are contractual in nature and those which are penal in nature. For example, in *Fletcher v. Grinnell Brothers*, 64 F.Supp. 778 (D.C.Mich.1946), a case brought under the FLSA, the court concluded that the cause of action survived because it was founded on an employment contract, the breach of which caused a property loss. The *Fletcher* court reasoned that the protections of the statute were read into every applicable employment contract. The plaintiff was therefore attempting to redress a breach of contract rights with resulting property losses. The court rejected the argument that, merely because the FLSA permits liquidated damages under some circumstances, it was penal in nature. *Id.* at 779.

This approach was taken in the most closely relevant decision in this circuit, *Bilanow v. United States*, 159 Ct.Cl. 93, 95, 309 F.2d 267 (1962). That was an action for wrongful termination. The plaintiff died, and the court permitted substitution of the administratrix of his estate:

Plaintiff has died since the commencement of this suit. A substitution of plaintiff's administratrix will be allowed under Rule 25(a). Plaintiff's suit is based on wrongful interference with his contract of employment. The right to employment and to earn a living free from undue molestation is a property right affecting the estate of plaintiff. Such right does not abate upon his death.

*Id.* at 95, 309 F.2d 267. Although *Bilanow* did not involve an overtime pay claim, we find it highly instructive that the court held that the employment claim survived. In terms of abatement *vel non*, we see no meaningful distinction between claims for wrongful termination and overtime pay.

Indeed, overtime pay claims fit even more compellingly into the pattern which emerges from the other cases discussed above. The lesson the court takes from these decisions is that actions will abate, among other reasons, if effective relief has become impossible or academic by reason of the decedent's death. That is plainly not the case here. The "insults" alleged, in other words, were not to the person of the decedents, but to their financial estates.

The "three factor" test yields the same result. Both statutes are directed at the working conditions of a particular employees. *See* 29 U.S.C. § 207; 5 U.S.C. § 5542. Although they plainly implement public concerns, the focus is on the treatment of particular individuals. The second factor, that any recovery must run to the individual harmed, is satisfied. FLSA provides that employers are "liable to the employee or employees affected." 29 U.S.C. § 216(b). FEPA, in turn, provides that employees "shall be paid for" overtime. 5 U.S.C. § 5542. The third factor-that the recovery not be disproportionate to the harm-is also met. The statutes are remedial in nature, calling for "compensation" in the case of FLSA and "overtime hourly rate of pay" in the case of FEPA. 29 U.S.C. § 216(b); 5 U.S.C. § 5542. Recovery is calculated from the amount of compensable unpaid overtime that an employee worked. While FLSA has a liquidated damages provision, the amount of such damages is equal to the unpaid overtime and is not disproportion-

ate to the harm or penal in nature. *Fletcher,* 64 F.Supp. at 779; *see* 29 U.S.C. § 216(d).

We conclude that decedents' causes of action under both the FLSA and FEPA survive to the representatives of their estates. This leads to the second question, namely, have the widows established that they are "proper parties" under RCFC 17(b)? More particularly, have they established that they have the right to represent the estates of the deceased plaintiffs?

The ability of one to sue in a representative capacity is determined under the relevant state law. RCFC 17(b). We look to the law of the states in which the decedents were domiciled.

■ Ms. Johnson's and Ms. Pulford's claims are governed by Minnesota law. Under Minnesota law for a will to be "effective to nominate an executor or administrator, it must be declared to be valid by an order of informal probate by the registrar, or an adjudication of probate by the court in a formal proceeding." MINN. STAT. § 524.3–102 (2003). Assuming such an order, the personal representative then has standing to sue or be sued in a representative capacity. *Id.* § 524.3–703(c).

Ms. Johnson has provided us with a letter of special administration issued on February 20, 2004, by the County of St. Louis Probate Court, State of Minnesota, authorizing her to act as special representative in prosecuting the decedent's claim. Ms. Johnson has satisfied the requirements of Minnesota law pertaining to designation as a personal representative.

■ Ms. Pulford's rights are also determined under Minnesota law. She was designated in Mr. Pulford's will to be both the executor of Mr. Pulford's estate as well as personal representative of the Arthur F. Pulford Revocable Trust. While the will grants her all the "powers, rights and privileges conferred upon a Personal Representative by Sections 524.3–711 and 524.3–715 of the Minnesota Uniform Probate Code," Ms. Pulford, through plaintiffs' counsel, asserts that she lacks the means to pay the Minnesota Probate Court the $600 fee required to obtain a letter of administration. The court is

sympathetic to her financial plight. However, the absence of her exercising the rights conferred upon her by the decedent's will leaves us with no proper party requesting substitution for the decedent, Mr. Pulford.

■ The claim of Mr. Drury and Mr. Ammons are governed by Georgia law. On November 18, 2003, Ms. Ammons filed with this court copies of letters of administration appointing her as administrator of the intestate estate of Mr. Ammons. The letters incorporate all the powers contained in GA. CODE ANN. § 53–12–232, which are extensive. Ms. Ammons satisfies the requirements under Georgia law in order to act as representative of her husband's estate.

■ Ms. Drury on January 15, 2004 filed with the Probate Court of Coweta County, Georgia a petition for letters of administration. A copy of the petition was provided to this court in plaintiffs' January 16, 2004 filing. She was appointed administrator of Mr. Drury's estate on February 17, 2004, and we now have the appointing document. The appointment incorporates all the relevant statutory powers, including the power to bring and defend suits. Ms. Drury thus also has established that she is the proper party to maintain the present suit.

CONCLUSION

Plaintiffs' motion is granted in part. Ms. Drury, Ms. Johnson and Ms. Ammons are substituted as personal representatives for their deceased husbands. The motion for substitution of Ms. Pulford is denied without prejudice.