NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 12a0171n.06

No. 10-3249

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED

**Feb 13, 2012**

LEONARD GREEN, Clerk

| | | |
|---|---|---|
| AVINASH YADAV, | ) | |
| | ) | ON APPEAL FROM THE |
| Petitioner, | ) | UNITED STATES |
| | ) | DEPARTMENT OF LABOR |
| v. | ) | |
| | ) | OPINION |
| L-3 COMMUNICATIONS CORP.; UNITED | ) | |
| STATES DEPARTMENT OF LABOR, | ) | |
| | ) | |
| Respondents. | ) | |
| | ) | |

BEFORE:    BATCHELDER, Chief Judge; COLE and COOK, Circuit Judges.

COLE, Circuit Judge. Petitioner Avinash Yadav filed a complaint with the U.S. Department of Labor alleging that he was terminated by Respondent L-3 Communications Corporation, Inc. ("L-3") in retaliation for bringing to the company's attention the suspected noncompliance of a development project with regulations set by the Federal Aviation Administration ("FAA"), in violation of the "whistleblower" provision of the Wendell H. Ford Aviation Investment and Reform Act for the 21st Century, 49 U.S.C. § 42121 ("AIR 21"). An administrative law judge dismissed the complaint, finding that L-3 showed by clear and convincing evidence that it would have terminated Yadav absent any protected activity. The Department of Labor Administrative Review Board ("ARB") affirmed. We DENY the petition for review.

## I. BACKGROUND

Ten months into his tenure as Manager, Engineering—Validation & Verification ("V&V Manager") at L-3's avionics division, Yadav decided to break his silence as to an engineering practice that had troubled him from the start. As his primary responsibility, Yadav oversaw L-3's development of and compliance with the engineering requirements for "SmartDeck," an airplane navigation system. Yadav came to believe that, instead of first planning, designing, and then building SmartDeck, L-3 seemed to "reverse engineer" the product. Through this technique, L-3 assessed product quality by starting with a fully manufactured product, breaking it down, testing it for errors, and then exploring ways to improve it.

For most of his time at L-3, Yadav reported to Wendy Ljungren, the Vice President of Engineering for the avionics division. Ljungren reported to the division president, Adrienne Stevens. In mid-August, during one of Yadav's weekly meetings with Ljungren, Yadav voiced his reservations about the SmartDeck project. On August 26, 2005, he memorialized these concerns in a memorandum to Ljungren ("the August 26 Memo"), in which Yadav opined that the process that L-3 actually used to develop SmartDeck's software differed so drastically from the process it reported using to the FAA that it violated FAA regulations. Yadav further described L-3's chosen development process as so "corrupt" that he found it virtually impossible to perform his V&V duties.

A few days later, Ljungren responded to Yadav's email, disagreeing that L-3 misrepresented SmartDeck's development process. She asked Yadav to discuss his concerns with other colleagues, to research whether the FAA accepted reverse engineering, and to report his findings to her. Ljungren was away from her office for two weeks, during which time Yadav did not perform the

requested tasks. Ljungren returned on September 14 and sent a follow-up email to Yadav, asking him again to report his findings, and conveying her disappointment that he had not raised these concerns earlier in the year or discussed them with colleagues closer to the development process. She also forwarded the August 26 Memo to Stevens and to Kathleen Margo, L-3's Ethics Officer and Director of Human Resources.

A series of emails between Yadav and Ljungren followed. In these emails, Yadav expressed his continuing concern about the alleged misrepresentations made by L-3 to the FAA. He insisted, however, that it was not his responsibility to create more accurate language; rather, it was Ljundren's job to require other employees on the project to submit more accurate phrasing. As the exchange continued without success, Yadav contacted Stevens to express his dismay at Ljungren's resistance to his recommendations for improvement and suggested that Ljungren's obstinance and incompetence lay at the root of the problem. In response to Yadav's concerns, Stevens originated an ethics investigation into the SmartDeck development process. The investigation uncovered no ethical deficiencies.

As Yadav saw the situation among himself, Ljungren, and Stevens deteriorate, he contacted Charlie Schafer, L-3's Chief Operations Officer in New York City, for assistance. The urgency of the concern Yadav expressed prompted Schafer to fly Yadav to New York the next day for an in-person meeting. One week after the meeting, Yadav sent Schafer a PowerPoint presentation outlining his vision for a systemic overhaul of L-3's avionics division, designed to eliminate the problems that Yadav had identified.

The next day, on September 30, 2005, L-3 terminated Yadav's employment. L-3 gave Yadav a four-page "Termination Memo," citing forty-five examples of his conduct falling below company expectations, grouped into categories, including:

• Strong tendencies to offer complaints and accusations without specific examples and suggested resolutions for improvements. . . .

• Significant lack of follow up and follow through with requests made by [Ljungren] on multiple occasions. . . .

• . . . Very willing to characterize a situation without actively managing, implementing solutions or creating resolution. . . .

• Demonstrates a lack of communication and working of issues with subordinates, colleagues/peers, and direct superior. Instead, makes efforts to elevate issues and communication "confidentially" with higher management. . . .

• Misrepresentation of the truth. . . .

• Concerns about your ability to lead your team and to create an environment of positive morale. . . .

Of the forty-five examples, a handful faulted him for the way in which he raised his complaints to his supervisors about SmartDeck's development process. The remainder focused on Yadav's failure to follow through with specific directives, deviations from company policy, and weaknesses in monitoring and leading his team.

Yadav unsuccessfully challenged his termination through the Department of Labor and exhausted the administrative review process. The ARB affirmed an administrative law judge ("ALJ") decision dismissing Yadav's complaint. Yadav appeals the ARB decision.

## II.  ANALYSIS

*A.  Standard of Review*

AIR 21 contains a whistleblower provision, shielding from discrimination any employee who "provide[s] . . . to the employer . . . information relating to any violation or alleged violation of any order, regulation, or standard of the Federal Aviation Administration or any other provision of Federal law relating to air carrier safety . . . ."  49 U.S.C. §  42121(a)(1).  To survive dismissal, the complainant must show that this behavior "was a contributing factor in the unfavorable personnel action alleged in the complaint."  *Id.* §  42121(b)(2)(B)(i).  The ARB will not grant relief "if the employer demonstrates, by clear and convincing evidence, that the employer would have taken the same unfavorable personnel action in the absence of that behavior."  49 U.S.C. §  42121(b)(2)(B)(ii).

The Court reviews ARB decisions regarding AIR 21 violations under the substantial evidence standard.  *See Hoffman v. Solis*, 636 F.3d 262, 267 (6th Cir. 2011).  Under this standard, the Court reviews factual findings and the application of law to facts for whether they are "'supported by substantial evidence on the record considered as a whole.'"  *NLRB v. Dole Fresh Vegetables, Inc.*, 334 F.3d 478, 484 (6th Cir. 2003) (quoting *W.F. Bolin Co. v. NLRB*, 70 F.3d 863, 870 (6th Cir. 1995)); *Turnbull Cone Baking Co. v. NLRB*, 778 F.2d 292, 295 (6th Cir. 1985).  "Substantial evidence" means evidence that is "adequate, in a reasonable mind, to uphold the [agency's] decision."  *Turnbull Cone Baking Co.*, 778 F.2d at 295 (citing *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487-88 (1951)).  "[W]e must uphold the Board's findings if supported by substantial evidence even if 'the court would justifiably have made a different choice had the matter been before

it de novo.'" *NLRB v. Gen. Fabrications Corp.*, 222 F.3d 218, 225 (6th Cir. 2000) (quoting

*Universal Camera Corp.*, 340 U.S. at 487-88).

*B. Yadav's Claims*

The parties agree that Yadav's complaints regarding SmartDeck's development process

constitute protected activity. Yadav maintains that substantial evidence does not support the ARB's

conclusion that L-3 offered clear and convincing proof that it would have fired him absent his

protected activity. The ARB held that L-3 met its burden by providing "numerous emails and

memos in the record [that] support L-3's decision to fire Yadav because he did little or nothing to

implement solutions beyond outlining the problems and criticizing other managers." *Yadav v. L-3

Commc'ns Corp.*, ARB Case No. 08-090, 23 (Jan. 7, 2010). We agree.

First, emails sent among Yadav's superiors reflect pervasive concern about Yadav's

inadequate performance. For example, after reviewing the August 26 Memo, Stevens remarked on

Yadav's lack of follow-up and interpreted the memo as expressing Yadav's intent to resign. Stevens

also complained to the Human Resources Department about Yadav's criticisms and unwillingness

to follow through with solutions, stressing that implementing solutions constituted a key part of his

job. Ljungren lamented that Yadav had not made any effort to resolve engineering problems with

his team and chose instead to direct general complaints to his supervisors. Additional memoranda

document Ljungren's, Stevens's, and others' frustration with Yadav's poor preparation for weekly

meetings and his tendency to blame colleagues for his own deficient performance.

Second, there was no evidence that L-3 leadership was engaged in any effort to conceal the

problems with the SmartDeck development protocol that Yadav raised. Ljungren repeatedly offered

to address any alleged "misrepresentations" in the certification documents, and to consult with the FAA or other sources on addressing any deficiencies in the SmartDeck program. Stevens instigated an ethics investigation using an outside auditor. Schafer flew Yadav to New York City and met with him in person. While Yadav finds fault with how L-3 management responded to his concerns, their alleged shortcomings do not negate evidence that they responded to Yadav's concerns in good faith.

Finally, Yadav's emails to Ljungren and others reflect his performance deficiencies. His condescending tone toward his supervisor ("I can't help someone who doesn't want to be helped"), inappropriate comments about her ("I can't believe that I have to tell your VP of Engineering how to do her job!"), refusal to follow explicit requests ("I don't need any 'new perspectives' on this"), and repeated threats to resign or otherwise abstain from his duties if L-3 did not meet his demands ("I cannot and will not allow this program to proceed with the V&V effort unless I get some clear answers to address my concern") evidence Yadav's unwillingness or inability to meet his employer's legitimate expectations. Taken together, this evidence supports the ARB's determination that L-3 terminated Yadav not for reporting a potential legal or ethical violation, but for refusing direct orders, failing to perform his clearly assigned duties, and falling well below legitimate performance expectations.

Yadav further argues that the ARB ignored direct evidence that L-3 fired him for his protected activities. Another L-3 employee had testified that Stevens told her that Yadav was terminated because he had gone over her head by contacting Schafer, and she found this action unacceptable. Yadav argues that Stevens's purported statement contradicts L-3's proffered reason for firing Yadav, raising doubt as to L-3's actual motive for terminating him. The ARB rejected this

argument as "speculative and irrelevant." *Yadav*, No. 08-090, at 19. We agree. Even accepting Yadav's contention that Stevens made such a statement, the statement is consistent with the Termination Memo, which references Yadav's tendency to "elevate issues and communicate 'confidentially' with higher management," including his contact with Schafer, as one factor supporting his termination. (Termination Memo, Yadav App'x at 414.) Thus, Stevens's purported statement, even if true, does not contradict L-3's stated reasons for Yadav's termination and is not evidence of any improper conduct by L-3.

Yadav further challenges the ARB decision insofar as it approved the ALJ's reliance on evidence that L-3 allegedly did not consider in making its decision to terminate Yadav. The particular evidence that Yadav challenges, however, receives scant mention in the ARB decision and order. Given that our task is to review the decision of the ARB, and not the ALJ, we are easily satisfied that substantial evidence supports the ARB's decision.

## III. CONCLUSION

For the above reasons, the petition for review is DENIED.