RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 23a0111p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────

WEATHERFORD U.S., L.P.,

*Petitioner*,

*v.*

U.S. DEPARTMENT OF LABOR, ADMINISTRATIVE BOARD,

*Respondent*,

ESTATE OF DANIEL A. AYRES,

*Intervenor*.

Nos. 20-4342/21-3282

ESTATE OF DANIEL A. AYRES,

*Petitioner*,

*v.*

U.S. DEPARTMENT OF LABOR, ADMINISTRATIVE BOARD,

*Respondent*,

WEATHERFORD US, L.P.,

*Intervenor*.

No. 21-3017

On Petitions for Review from the United States Department of Labor.
Nos. ARB 2018-0006; 2018-007; 2018-0074.

Argued: January 25, 2023

Decided and Filed: May 24, 2023

Before: BUSH, LARSEN, and MATHIS, Circuit Judges.

———————

**COUNSEL**

———————

**ARGUED:** Donald G. Slezak, LEWIS BRISBOIS BISGAARD & SMITH, LLP, Cleveland, Ohio, for Weatherford. Linda Hong Hanh Wiles, UNITED STATES DEPARTMENT OF LABOR, Washington, D.C., for United States Department of Labor. Martin S. Hume, MARTIN S. HUME CO., L.P.A., Youngstown, Ohio, for Estate of Daniel Ayres. **ON BRIEF:** 20-4342/21-3282: Donald G. Slezak, David A. Campbell, Andrea V. Arnold, LEWIS BRISBOIS BISGAARD & SMITH, LLP, Cleveland, Ohio, for Weatherford. Linda Hong Hanh Wiles, UNITED STATES DEPARTMENT OF LABOR, Washington, D.C., for United States Department of Labor. Martin S. Hume, MARTIN S. HUME CO., L.P.A., Youngstown, Ohio, for Estate of Daniel Ayres.

———————

**OPINION**

———————

LARSEN, Circuit Judge. Daniel Ayres brought an administrative action complaining that his former employer, Weatherford U.S., L.P., had retaliated against him for engaging in protected behavior under the Surface Transportation Assistance Act (STAA). An administrative law judge (ALJ) in the Department of Labor found for Ayres and awarded him backpay, compensatory and punitive damages, and attorneys' fees. Ayres passed away in the middle of the ALJ proceedings. The Administrative Review Board (Board) affirmed the ALJ's awards, except for punitive damages. The Board concluded that the punitive damages claim had abated upon Ayres's death. Ayres's estate petitions for review of the reversal of punitive damages. Weatherford petitions for review of the Board's ruling that it violated the STAA and the accompanying damages and fees. For the reasons that follow, we DENY both petitions.

I.

Daniel Ayres began working for Weatherford, an oilfield services company in April 2012. Ayres was assigned to Weatherford's fracking operations in Williston, North Dakota, where his duties included driving, setting up, and operating equipment. Ayres normally worked on a cycle: three weeks on the oil field in Williston (where he was eligible for overtime and bonuses) and two weeks at his home in Ohio (with full base pay). The parties present different

views of Ayres's employment success. Ayres points to coworker testimony that he was a good employee, "pleasant," and a "good worker," while Weatherford emphasizes testimony that Ayres was confrontational and involved in an altercation on his last day of work in Williston.

While Ayres was in Williston, work was slower than expected, so he was asked to perform tasks beyond his job description. At some point between July 12 and July 31, 2012, Lee Hammons, a crew supervisor, directed Ayres to drive a truck outside of his driving certification; Ayres refused.[1] Ayres then told Hammons and his district manager, Terry Crabb, that employees were being asked to drive loads they were not certified for, in violation of Department of Transportation (DOT) regulations. Crabb responded that "they needed that job done." At an employee meeting on August 10, 2012, Crabb said that anyone who complained to human resources (HR) would be fired.

In August 2012, Ayres spoke on the phone with James Nicholson, a regional HR manager. Ayres told Nicholson about being asked to drive loads in violation of DOT regulations, violation of rules related to driving hazardous materials, Weatherford employees drinking and driving company vehicles, and Crabb's comments about firing anyone who complained to HR. There was no contemporaneous documentation of this call, though the ALJ heard testimony that Crabb was aware Ayres had contacted HR, and Ayres referenced the call in a later email. On August 20, 2012, the last day of Ayres's Williston rotation, he asked Crabb if he could be transferred to a different rotation, either near his home in Ohio or at a site in Utah. That same day, Ayres was taken to the airport in a separate van from the rest of the employees after a verbal altercation either with Crabb (Ayres's story) or a co-worker (Hammons' recounting). Ayres called Nicholson again while in the van.

Ayres had originally been scheduled to return to Williston on September 5, 2012; everyone else in his work section was called back as planned. But at some point before August 20, Ayres was included on a list of non-essential employees who would not be called back for the next rotation. This meant that Ayres would be left at home, and while paid, he would not be eligible for overtime or bonuses. On September 20, when Weatherford still had not instructed

---

[1]The ALJ found this was common practice at Williston.

Ayres to return for his next rotation, Ayres emailed Nicholson asking about his assignment status and explaining why he thought he was being "improperly retaliated against." Those reasons included advising Nicholson that "employees were still being asked to carry loads in violation of DOT regulation[s]." Nicholson told Ayres that the "alleged issues" were being investigated. Weatherford has no record of any such investigation.

On October 22, 2012, Nicholson told Ayres that he no longer had a job. His last day had been October 19, 2012, due to a "Reduction in Force" because of a "realignment . . . due to our customer base." But when Ayres applied for unemployment benefits, Weatherford contested his eligibility, claiming he had been discharged for just cause because he "failed to follow instructions."

Ayres sued Weatherford in Ohio state court. Weatherford removed the case to the Northern District of Ohio. Ayres's suit alleged retaliation under the Ohio Whistleblower's Protection Act (OWPA), O.R.C. § 4113.52, and the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201, et seq. Ayres claimed that Weatherford had violated the OWPA by discharging him for reporting his supervisors' safety violations (including violating DOT regulations). *See Ayres v. Weatherford U.S., LP*, 139 F. Supp. 3d 861, 865 (N.D. Ohio 2015). Ayres's FLSA claim alleged that "he was discharged for complaining that he was not properly paid overtime." *Id.* The district court granted Weatherford's motion for summary judgment and dismissed Ayres's claims. *See id.* at 869. The court dismissed Ayres's OWPA claim because all events giving rise to the allegations took place in North Dakota, not Ohio. *Id.* at 867 ("Applying an Ohio law to individuals and events that took place in North Dakota is a direct violation of North Dakota's 'undeniable and unlimited jurisdiction over all persons and things within its territorial limits' that the Constitution guarantees."). And it dismissed the FLSA claim because the record did "not support a causal connection between his complaints concerning overtime and his discharge as part of a general reduction in force." *Id.* at 869. Ayres did not appeal.

The day after Ayres filed suit in state court, Ayres also filed an STAA complaint with the Secretary of Labor. Weatherford moved to dismiss, arguing that Ayres was collaterally estopped

from bringing the administrative claims by his previous lawsuit. An ALJ disagreed and denied Weatherford's motion to dismiss.

Ayres passed away on March 30, 2016; his widow and administrator of his estate, Kim Ayres, was substituted as the complainant. The ALJ issued his final decision in 2017. The ALJ found that: Ayres had engaged in STAA-protected activity when he refused to drive in violation of DOT regulations; Weatherford management knew about the protected activity; the protected activity contributed to Ayres's eventual discharge; and Weatherford failed to present clear and convincing evidence that it would have taken the same actions absent Ayres's protected activities. The ALJ concluded that Weatherford violated the STAA when it dismissed Ayres. The ALJ awarded Ayres $82,119 in back pay, $10,000 for emotional harm, and $25,000 in punitive damages; the ALJ later awarded Ayres's estate $36,219.01 in attorneys' fees and costs.

Weatherford petitioned the Board for review of the ALJ's decision and award of attorney fees. The Board affirmed the ALJ's decision except for the award of punitive damages. The Board reversed the punitive damages award, reasoning that "penal claims, including the right to recover punitive damages, abate upon the death of the injured party." The Board also awarded Ayres's estate attorneys' fees of $12,670.

Ayres seeks reinstatement of the punitive damages award; Weatherford seeks review of the Board's decision and attorneys' fees award.

## II.

### A.

Ayres's petition for review seeks reinstatement of the ALJ's award of punitive damages. The Board vacated that award on the ground that the claim for punitive damages abated upon Ayres's death. That decision was not contrary to law. *See* 49 U.S.C. § 31105(d) (incorporating by reference 5 U.S.C. § 706). We agree with the Board.

In 2007, Congress amended the STAA to provide for punitive damages. Pub. L. No. 110–53, § 1536, 121 Stat. 266, 464–67. The Act did not address survivability, and no court has

addressed whether the right to recover punitive damages under the STAA survives a claimant's death.

When Congress has not spoken to the question, "the survival of a federal cause of action is a question of federal common law."**2** *Parchman v. SLM Corp.*, 896 F.3d 728, 738 (6th Cir. 2018) (quoting *United States v. NEC Corp.*, 11 F.3d 136, 137 (11th Cir. 1993), *as amended* (Jan. 12, 1994)). We have understood the federal common law to say that "'remedial' claims—*i.e.,* claims to compensate the plaintiff—survive a party's death, whereas 'punitive' claims—*i.e.,* claims to punish the defendant—do not." *Haggard v. Stevens*, 683 F.3d 714, 717 (6th Cir. 2012) (citing *Murphy v. Household Fin. Corp.*, 560 F.2d 206, 208–09, 211 (6th Cir. 1977)); *see Ex parte Schreiber*, 110 U.S. 76, 80 (1884) ("At common law, actions on penal statutes do not survive." (citing 5 John Comyns, A Digest of the Laws of England 260–61 (1822) ("Nor, [does] an action upon a penal statute" survive.)). Other courts agree. *See, e.g.*, *Wheeler v. City of Santa Clara*, 894 F.3d 1046, 1057 (9th Cir. 2018) (citing *Guenther v. Griffin Constr. Co., Inc.*, 846 F.3d 979, 986 (8th Cir. 2017)); *see Revock v. Cowpet Bay W. Condo. Ass'n*, 853 F.3d 96, 109 (3d Cir. 2017) ("[W]e will follow the weight of authority, which applies the . . . common law rule of survival, under which remedial claims survive, but penal claims do not."); *Malvino v. Delluniversita*, 840 F.3d 223, 229 (5th Cir. 2016) ("The general rule for the survivability of federal statutes is that penal statutes do not survive, whereas remedial statutes do."); *United States v. Land, Winston Cnty.*, 221 F.3d 1194, 1197 (11th Cir. 2000) ("The survivability of a cause of action depends on whether the recovery is remedial, an action which compensates an individual for specific harm suffered, or penal, an action which imposes damages upon the defendant for a general wrong to the public."); *Case of One 1985 Nissan, 300ZX, VIN: JN1C214SFX069854*, 889 F.2d 1317, 1319 (4th Cir. 1989) ("[T]he decision on whether [the forfeiture action] abates on death of the property owner depends on whether the provision is

---

**2**Because federal law applies, we cannot accept Ayres's invitation to adopt the Illinois state rule. The Supreme Court rejected a similar request in *Ex parte Schreiber*, 110 U.S. 76 (1884). The Court explained that just "as the nature of penalties and forfeitures imposed by acts of [C]ongress cannot be changed by state laws, it follows that state statutes allowing suits on state penal statutes to be prosecuted after the death of the offender, can have no effect on suits in the courts of the United States for the recovery of penalties imposed by an act of [C]ongress." *Id.* at 80.

primarily civil or penal in nature."). Applying this rule, the punitive damages award does not survive.

A claim for punitive damages is inherently penal in nature. The very point of such an award is to "punish the defendant and deter future wrongdoing." *Cooper Indus., Inc. v. Leatherman Tool Grp., Inc.*, 532 U.S. 424, 432 (2001); *see also id.* (The "imposition of punitive damages is an expression of . . . moral condemnation."). It is little surprise then that courts construing federal statutes routinely hold that claims for punitive damages are "penal" and do not survive a party's death. *See, e.g.*, *Hanson v. Atl. Rsch. Corp.*, No. 4:02-CV-00301 SMR, 2003 WL 430484, at *4 (E.D. Ark. Feb. 14, 2003) (holding that plaintiff's "claim for punitive damages under the ADA is penal in nature and did not survive his death"); *Kulling v. Grinders for Indus., Inc.*, 115 F. Supp. 2d 828, 850 (E.D. Mich. 2000) (finding that plaintiff's "claim under the ADEA survives his death, except to the extent that it seeks an award of 'liquidated damages'"); *E.E.O.C. v. Deloitte & Touche, LLP*, No. 97:CIV-6484-LMM, 2000 WL 1024700, at *7 (S.D.N.Y. July 25, 2000) ("The claim for compensatory damages survives [plaintiff's] death; the claim for punitive damages, however, does not."); *Allred v. Solaray, Inc.*, 971 F. Supp. 1394, 1396 (D. Utah 1997) ("[C]laims for punitive damages under the ADA do not survive the plaintiff's death."); *Estwick v. U.S. Air Shuttle*, 950 F. Supp. 493, 498 (E.D.N.Y. 1996) (holding that after plaintiff's death, "[t]he punitive damages are plainly penal and must be dismissed under either federal or state law"); *Hawes v. Johnson & Johnson*, 940 F. Supp. 697, 703 (D.N.J. 1996) (determining that "plaintiff's claims for liquidated and punitive damages which are penal in nature under the ADEA did not survive his death"); *Caraballo v. S. Stevedoring, Inc.*, 932 F. Supp. 1462, 1466 (S.D. Fla. 1996) (finding that punitive damages claims under the ADA and ADEA do not survive plaintiff's death). We can locate no authority holding otherwise.[3]

---

[3]Federal courts sometimes conclude that punitive damages claims survive in cases arising under 42 U.S.C. § 1983. That's because the survivability of § 1983 claims is generally governed by the survivorship rules of the forum state, pursuant to 42 U.S.C. § 1988. *See Robertson v. Wegmann*, 436 U.S. 584, 588 (1978). Some states permit punitive damages claims to survive. *See, e.g.*, *Whetstone v. Binner*, 57 N.E.3d 1111, 1114 (Ohio 2016) ("Pursuant to [O.R.C. §] 2305.21, the right to punitive damages continues when an injured plaintiff has died and the plaintiff's claim is pursued by a representative of his or her estate.").

Penal claims abate even when the deceased party is the complainant:  "The typical rule under the federal common law is that an action for a penalty does not survive the death of the plaintiff."  *Cook v. Hairston*, 948 F.2d 1288, 1991 WL 253302, at \*6 (6th Cir. 1991) (per curiam) (unpublished table decision) (quoting *Smith v. Dep't of Hum. Servs.*, 876 F.2d 832, 834–35 (10th Cir. 1989)); *see Kilgo v. Bowman Transp., Inc.*, 789 F.2d 859, 876 (11th Cir. 1986) ("[A] federal cause of action generally survives the death of the plaintiff unless it is an action for penalties."); *James v. Home Const. Co. of Mobile, Inc.*, 621 F.2d 727, 730 (5th Cir. 1980) ("Traditionally, the rule has been that actions for penalties do not survive the death of the plaintiff. . . . Therefore we must determine whether the remedy that is part of the action . . . is a penal sanction."); *Smith v. No. 2 Galesburg Crown Fin. Corp.*, 615 F.2d 407, 414 (7th Cir. 1980) ("The general rule is that actions for penalties do not survive the death of the plaintiff.") *overruled on other grounds by Pridegon v. Gates Credit Union*, 683 F.2d 182 (7th Cir. 1982); *see also* Note, *Survival of Actions Brought under Federal Statutes*, 63 Colum. L. Rev. 290, 290 (1963) ("[T]ort actions considered penal, as well as criminal actions, were held to be extinguished by death; they were allowed neither for nor against representatives of the deceased.").

"[W]here a common-law principle is well established, . . . the courts may take it as a given that Congress has legislated with an expectation that the principle will apply except when a statutory purpose to the contrary is evident."  *Astoria Fed. Sav. & Loan Ass'n v. Solimino*, 501 U.S. 104, 108 (1991) (quotation marks and citations omitted).  We see nothing in the STAA to suggest that Congress intended to depart from this common law consensus when it added the punitive damages remedy in 2007.[4]  We assume, then, that because Congress did not speak to

---

[4]Each of the cases cited above predates Congress's 2007 amendment of the STAA.  The consensus remains unbroken:  because "punitive damages are plainly penal" a deceased plaintiffs' claim for punitive damages does not survive.  *See Fulk v. Norfolk S. Ry. Co.*, 35 F. Supp. 3d 749, 764 (M.D.N.C. 2014) (quotation marks and citation omitted) (dismissing a claim for punitive damages under a Federal Railroad Safety Act's anti-retaliation provision after the plaintiff's death); *see also E.E.O.C. v. Coughlin, Inc.*, No. 2:21-CV-99-WKS, 2022 WL 1568529, at \*6 (D. Vt. May 18, 2022) (finding that plaintiff's "claims for punitive damages do not survive her death"); *Hopper v. Credit Assocs., LLC*, No. 2:20-CV-522, 2021 WL 5754732, at \*3 (S.D. Ohio Dec. 3, 2021), *report and recommendation adopted*, No. 2:20-CV-522, 2022 WL 889054 (S.D. Ohio Mar. 25, 2022) (holding that deceased plaintiff's "claims for statutory damages under the FCRA survive her death, but her claims for punitive damages do not"); *E.E.O.C. v. Marquez Bros. Int'l, Inc.*, No. 1:17-CV-44 AWI-EPG, 2018 WL 3197796, at \*10 (E.D. Cal. June 26, 2018) (under Title VII, "punitive damages are penal and do not survive a claimant's death"); *Beaudry v.*

survivability, it added punitive damages to the STAA with the understanding that they would abate upon a plaintiff's death.

Ayres suggests that Congress's "use of the term 'punitive damages' does not convert the STAA into a penal law." But "respect for Congress's prerogatives as policymaker means carefully attending to the words it chose rather than replacing them with others of our own." *Murphy v. Smith*, 138 S. Ct. 784, 788 (2018). Here, Congress chose to label the additional STAA damages "punitive." That "declaration" is "controlling here." *Bowles v. Farmers Nat. Bank of Lebanon*, 147 F.2d 425, 429 (6th Cir. 1945); *see also id.* ("If Congress had provided that the recoveries under this section were to be considered compensatory or liquidated damages . . . or should not be considered a penalty, the court would be bound thereby."). Ayres offers no reason to believe that, in the STAA context, the damages Congress labeled as "punitive" serve some other function. *Id.* Nor did Congress express an intent to depart from the common-law rule by providing that the STAA's "punitive" damages should survive. Yet, in at least one other circumstance, Congress has done just that. In 2008, when Congress added punitive damages to the "state-sponsored terrorism" exception to the Foreign Sovereign Immunities Act—Congress made clear that punitive damages were available in cases involving the plaintiff's death. Pub. L. No. 110–181, § 1083, 122 Stat. 3, 338–44 (2008); 28 U.S.C. § 1605A(c).

Congress chose in the STAA to make "punitive" damages available. We take Congress at its word. As such, there is no need to evaluate whether punitive damages are penal or remedial under the *Murphy* factors, *see* 560 F.2d at 209. Congress supplied us with the answer when they labeled the damages as punitive and failed to expressly provide for survival. *Bowles*, 147 F.2d at 429.

We agree with the Board that Ayres's claims for punitive damages abated upon his death.

---

*TeleCheck Servs., Inc.*, No. 3:07-0842, 2016 WL 11398115, at *14 (M.D. Tenn. Sept. 29, 2016) ("[A] claim for punitive damages, including one brought pursuant to a generally remedial statute, abates upon the death of a plaintiff."); *E.E.O.C. v. Timeless Invs., Inc.*, 734 F. Supp. 2d 1035, 1057 (E.D. Cal. 2010) (holding that liquidated damages claims under the ADEA were penal or punitive and do not survive a claimant's death); *Kettner v. Compass Grp. USA, Inc.*, 570 F. Supp. 2d 1121, 1134 (D. Minn. 2008) (holding that a deceased "[p]laintiff is entitled to all available remedies under the ADA and Rehabilitation Act except for liquidated or punitive damages").

B.

Weatherford's petition argues that Ayres's earlier lawsuit precludes him from bringing his claims to the Department of Labor. *See B & B Hardware, Inc. v. Hargis Indus., Inc.*, 575 U.S. 138, 148–49 (2015) (explaining that preclusion may apply "where a single issue is before a court and an administrative agency"). Weatherford invokes "collateral estoppel," or issue preclusion.[5] The agency determined that Ayres's claims are not precluded. We agree.

Issue preclusion bars litigation of an issue when four specific requirements are met: (1) the "precise issue" was "raised and actually litigated" in the prior suit; (2) the determination of the issue was "necessary to the outcome of the prior proceedings;" (3) "the prior proceeding resulted in a final judgment on the merits;" and (4) Ayres "had a full and fair opportunity to litigate the issue in the prior proceeding."[6] *Cobbins v. Tenn. Dep't. of Transp.*, 566 F.3d 582, 589–90 (6th Cir. 2009). Here, Ayres's OWPA claim was not "actually litigated" in the district court. The district court concluded that Ayres did not have a claim under the OWPA because all of the conduct took place in North Dakota, not Ohio. The court did not address the merits of Ayres's argument that Weatherford had retaliated against him for reporting violations of DOT regulations. And Ayres's FLSA claim did not involve the "precise issue" at bar in his STAA claims, it involved other, overtime-related claims. As such, Ayres's STAA claims are not issue precluded.

Weatherford's reliance on an unpublished Ninth Circuit case, *Germann v. Department of Labor*, 206 F. App'x 662 (9th Cir. 2006), does not change that result. In addition to not binding us, *Germann* is distinguishable. There, Germann brought the exact same complaint in state court

---

[5]The Supreme Court has explained that the terms "claim preclusion" and "issue preclusion" have replaced the "more confusing" terms "merger" or "bar" (for claim preclusion) and "collateral estoppel" (for issue preclusion). *Taylor v. Sturgill*, 553 U.S. 880, 892 n.5 (2008). Weatherford's brief in this court asks us to consider claim preclusion in addition to issue preclusion. But Weatherford did not raise claim preclusion before the agency, so the company has forfeited the argument. *See* 29 C.F.R. § 1978.110(a) ("The parties should identify in their petitions [to the Board] for review the legal conclusions or orders to which they object, or the objections may be deemed waived."); *cf. Island Creek Coal Co. v. Bryan*, 937 F.3d 738, 750 (6th Cir. 2019) (reaffirming that "our decades-long precedent has refused to consider issues that parties failed to present to the Board").

[6]We apply federal law: the ALJ applied federal law in denying Weatherford's motion to dismiss the STAA claims, and Weatherford did not challenge that choice of law. As such, any choice of law issue has been forfeited. *See Meridia Prods. Liab. Litig. v. Abbott Lab'ys*, 447 F.3d 861, 865 (6th Cir. 2006).

and to the Department of Labor, and the state court reached a final decision on the merits. *See id.* at 665. Because Ayres's claims are not precluded, we continue to the merits of Weatherford's petition.

## C.

The Department of Labor concluded that Weatherford violated the STAA's whistleblower provisions. "[W]e review the Secretary's decisions under the STAA applying a substantial evidence standard." *Yellow Freight Sys., Inc. v. Reich*, 27 F.3d 1133, 1138 (6th Cir. 1994). The substantial evidence standard is highly deferential. "This court may not relitigate the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Moon v. Transp. Drivers, Inc.*, 836 F.2d 226, 229 (6th Cir. 1987) (per curiam). And we must uphold the agency's findings, "even if 'the court would justifiably have made a different choice had the matter come before it de novo.'" *Yadav v. L-3 Commc'ns Corp.*, 462 F. App'x 533, 536 (6th Cir. 2012) (quoting *NLRB v. Gen. Fabrications Corp.*, 222 F.3d 218, 225 (6th Cir. 2000)). Substantial evidence supports the agency's decision here.

To make out a prima facie case of retaliation, Ayres had to show that (1) he engaged in activity "protected under the STAA; (2) the employer knew of the protected conduct; (3) the employer took an adverse employment action against [him]; and (4) the [protected activity] was a contributing factor in the employer's decision to take the adverse action." *Maverick Transp., LLC v. U.S. Dep't of Lab.*, 739 F.3d 1149, 1155 (8th Cir. 2014), *as corrected* (Jan. 17, 2014); *see also TransAm Trucking, Inc. v. U.S. Dep't of Lab.*, 833 F.3d 1206, 1213 (10th Cir. 2016); *Formella v. U.S. Dep't of Lab.*, 628 F.3d 381, 389 (7th Cir. 2010). Once Ayres made that showing, the burden shifted to Weatherford, to show "by clear and convincing evidence, that the employer would have taken the same unfavorable personnel action in the absence of that [protected] behavior." 49 U.S.C. § 31105(b)(1); *id.* § 42121(b)(2)(B)(ii).

Weatherford argues that the *McDonnell Douglas* test, applicable in Title VII claims, applies instead. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). This argument is meritless. In 2007, Congress amended the STAA to incorporate the burdens of proof set forth in the whistleblower provision of the Wendell H. Ford Aviation Investment and

Reform Act for the 21st Century, 49 U.S.C. § 42121(b)(2)(B). *Compare* § 31105(b)(1), *with* 49 U.S.C. § 2305(c) (1982). The ALJ and the Board applied the statutorily required test. Weatherford's reliance on our prior cases—*Yellow Freight System, Inc.*, 27 F.3d at 1138; *Melton v. U.S. Department of Labor*, 373 F. App'x. 572, 576–77 (6th Cir. 2010); and *Ridgley v. U.S. Department of Labor*, 298 F. App'x 447, 452 (6th Cir. 2008)—does not help its cause. Those cases were either decided prior to the STAA's amendment (*Yellow Freight*) or involved conduct that occurred prior to the amendment's effective date (*Melton* and *Ridgley*). No legal error occurred.

Applying this test, substantial evidence supports the agency's conclusion that Ayres engaged in protected activity when he refused to drive outside of his certification and raised concerns about the incident (and other safety violations). The STAA protects employees who refuse to operate vehicles in violation of federal regulations and who have filed complaints relating to violations of such regulations. *See id.* § 31105(a). The ALJ heard testimony from Ayres, Hammons, and Ayres's co-worker, Richard Hanson, that Ayres had made such a refusal. And substantial evidence supports Ayres's contention that he complained to Nicholson about safety violations; Nicholson confirmed that Ayres did so.[7]

Weatherford's contention that the ALJ gave improper weight to Ayres's testimony and that of his coworkers over manager testimony is unpersuasive; this court will not "decide questions of credibility." *Moon*, 836 F.2d at 229. Further, the ALJ took care to note Ayres's credibility issues and included them in his analysis. *See* AR Vol. I, A-00101–02.

The agency's conclusion that Weatherford managers were aware of Ayres's protected activity is also supported by substantial evidence. Hammons and Nicholson, both managers, respectively confirmed Ayres's refusal to drive and complaints in their testimony.

Nor was it error for the agency to conclude that Ayres's protected activity played a role in taking adverse employment actions against Ayres.[8] The Board noted the "abundance of

---

[7]Weatherford also says Ayres's complaints were too vague, but substantial evidence (Hammons' and Nicholson's testimony) supports the ALJ's conclusion to the contrary.

[8]The parties do not contest that Ayres's placement on the non-essential list and dismissal were adverse employment actions.

circumstantial evidence involving animus, temporal proximity, and pretext supporting a conclusion that Ayres's protected activity contributed to his being placed on the non-essential list and discharge." This evidence was enough for the agency to conclude that Ayres's protected activity "was a contributing factor in the unfavorable personnel action alleged in the complaint." 49 U.S.C. § 42121(b)(2)(B)(iii); *see Consol. Rail Corp. v. U.S. Dep't of Lab.*, 567 F. App'x 334, 338 (6th Cir. 2014) ("[T]he contributing factor standard has been understood to mean 'any factor which, alone or in connection with other factors, tends to affect in any way the outcome of the decision.'" (quoting *Araujo v. N.J. Transit Rail Operations, Inc.*, 708 F.3d 152, 158 (3d Cir. 2013))).

Testimony supports the agency's findings that Weatherford displayed animus toward Ayres, *see Consol. Rail Corp.*, 567 F. App'x at 338, and that Ayres's dismissal was close in time to the protected actions. Weatherford's contention that the timing does not matter because of Ayres's short employment tenure is unconvincing. *See Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 525 (6th Cir. 2008) ("Where an adverse employment action occurs very close in time after an employer learns of a protected activity, such temporal proximity between the events is significant enough to constitute evidence of a causal connection for the purposes of satisfying a prima facie case of retaliation."); *see also Howington v. Quality Rest. Concepts, LLC*, 298 F. App'x 436, 446 (6th Cir. 2008) (finding a causal connection based on temporal proximity between the protected activity and adverse employment action during a three-month employment period).

And substantial evidence supports the agency's findings that Weatherford's explanations for Ayres's placement on the non-essential list and dismissal were a pretext for retaliation. Weatherford points to the fact that another employee who refused to drive a load outside of his certification was not placed on the non-essential list. Weatherford also contends that Ayres's placement was based on lower-than-expected activity at Williston and Ayres's performance issues. But the ALJ found that Weatherford's rationale for Ayres's termination and placement on the non-essential list was inconsistent. "An employer's changing rationale for making an adverse employment decision can be evidence of pretext." *See Thurman v. Yellow Freight Sys., Inc.*, 90 F.3d 1160, 1167 (6th Cir. 1996). And substantial evidence supports this finding of

inconsistency. The ALJ heard evidence that even while Ayres was on the non-essential list, Weatherford hired new employees in Ayres's job category (undermining the economic explanation), and Ayres was initially told that he was not being called back so Weatherford could investigate his safety complaints. And Weatherford told the state unemployment agency that Ayres was fired because he "failed to follow instructions," not because of a reduction in force. So the Board's finding of pretext is also supported by substantial evidence.

Finally, the Board found that Weatherford did not meet its rebuttal burden, as it could not show by clear and convincing evidence that it would have taken the same adverse actions absent Ayres's protected activities. *See* 49 U.S.C. § 31105(b)(1). The ALJ and the Board considered Weatherford's changing reasons for Ayres's termination and placement on the non-essential list and conflicting evidence about Ayres's performance issues. Substantial evidence supports the Board's factfinding, and its conclusion that Weatherford had not presented clear and convincing rebuttal evidence is not arbitrary, capricious, or otherwise an abuse of discretion. As a result, Weatherford has not shown that the Department of Labor erred when it found that Weatherford violated the STAA whistleblower provisions.

### D.

Weatherford next challenges the ALJ and Board's awards of compensatory damages and attorneys' fees to Ayres. The STAA permits the payment of "compensatory damages, including backpay with interest and compensation for any special damages sustained as a result of the discrimination, including litigation costs, expert witness fees, and reasonable attorney fees." 49 U.S.C. § 31105(b)(3)(A)(iii).

*Backpay.* The Board reasonably considered relevant factors in approving the ALJ's backpay award. The Board noted that the ALJ's analysis was based on Ayres's earnings from the date of his discharge until the hearing (Ayres passed away shortly after the hearing). The Board also considered that the ALJ "denied pay for a six-month period during which Ayres did not seek comparable employment, subtracted [Ayres's] 'business income' earnings in 2014, and subtracted the salary Ayres earned while employed at other employers following his discharge." This was reasoned decision making.

Weatherford argues that Ayres's backpay should have ended in October 2014 under the after-acquired evidence doctrine because Weatherford discovered false statements on Ayres's employment application that would have resulted in his termination. But the ALJ considered this contention. Substantial evidence supports the ALJ's findings that Weatherford did not show it would have terminated Ayres upon learning of the false statements, as its own HR representative testified that she was unsure if it would have resulted in Ayres's termination.

The Board considered and rejected Weatherford's contention that Ayres failed to mitigate damages because he was discharged from subsequent employment for cause. The Board reasonably considered the ALJ's conclusion and lack of evidence and affirmed the ALJ. Finally, the Board affirmed the ALJ's consideration of Ayres's subsequent wages and Social Security benefits; Weatherford's contentions otherwise are unavailing.

*Attorneys' Fees.* Weatherford challenges the ALJ and Board's respective awards of attorney fees and costs to Ayres's estate. The STAA allows a prevailing party to be reimbursed for attorney costs and litigation fees. 49 U.S.C. § 31105(b)(3)(B). The agency considered and rejected the arguments that Weatherford raises on appeal: the ALJ explicitly considered and discounted hours that prepared for the district court case and the Board found that "the attorney hours expended were reasonably incurred and the requested hourly rate was reasonable." This was not arbitrary, capricious, or an abuse of discretion. The ALJ and Board used the "lodestar" method which "approximates the fee that the prevailing attorney would have received if he or she had been representing a paying client who was billed by the hour in a comparable case," based on the local rates. *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 551 (2010). There is "a 'strong presumption' that the lodestar figure is reasonable." *Id.* at 554.

Weatherford also argues that attorneys' fees should not be awarded because this case was close. But the statute states, without regard to the closeness of a case, that "the Secretary of Labor may assess against the person against whom the order is issued the costs (including attorney fees) reasonably incurred by the complainant in bringing the complaint." 49 U.S.C. § 31105(b)(3)(B). Weatherford also relies on the district court's dismissal of Ayres's claims, but

since that was a separate case with separate issues, that does not affect the award of attorneys'
fees in the agency proceedings.

\* \* \*

We DENY the petitions for review.