NOT RECOMMENDED FOR PUBLICATION
File Name: 25a0303n.06

No. 24-1964

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Jun 16, 2025
KELLY L. STEPHENS, Clerk

|  |  |  |
|---|---|---|
| ANTHONY LEE, | ) | |
| Plaintiff-Appellant | ) ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN |
| v. | ) ) | |
| DANA, INC., | ) | OPINION |
| Defendant-Appellee. | ) ) | |
| | ) | |

Before: SUTTON, Chief Judge; GIBBONS and WHITE, Circuit Judges.

**HELENE N. WHITE, Circuit Judge.** Plaintiff-Appellant Anthony Lee (Lee) appeals the grant of summary judgment in favor of Defendant-Appellee Dana, Inc. (Dana) on his claims alleging retaliation and race-based discrimination and harassment in violation of Title VII; retaliation and race-based discrimination in violation of the Michigan Elliot-Larsen Civil Rights Act (ELCRA); and wrongful discharge in violation of Michigan public policy. We affirm.

**I.**

Lee, a Black man, began working for Dana through a temporary agency in June 2003. Dana employed Lee directly as an assembly operator beginning in September 2004. In 2007, Lee became a material handler and was required to operate a forklift. Between August and September of 2014, Lee was involved in two forklift accidents in which he hit stationary objects with his forklift. After the first accident, Lee was temporarily barred from operating a forklift, and after the second, he received a verbal warning and a disciplinary write-up. Lee hit a stationary object with his forklift a third time in November 2016. Because of the severity of this accident, Dana

removed Lee from his material-handler position and reassigned him to an assembly-operator position.

Lee filed two internal grievances through his union, on February 14, 2017 and August 21, 2018, requesting that his forklift privileges be reinstated. The second grievance stated, "The [union] committee feels the time of this discipline has gone beyond reasonable time limits." (R. 19-11, Employee Grievance, PID 347).

Lee also submitted two documents to human resources in December 2017. In the first, he requested a copy of his personnel file and a written statement explaining why he was not permitted to drive a forklift. In the second, he complained that his supervisor refused to allow him to serve as a Team Lead, which involves supervisory and training duties. Lee submitted another complaint to human resources in January 2018, in which he alleged that his supervisors caused him to lose wages by failing to give him the same opportunities to work overtime that they gave other employees. He also complained that one of his supervisors spoke to him in an unprofessional tone and lied to him about whether he was scheduled to work overtime on a particular day. Additionally, he asserted that another employee who had been involved in a forklift accident had regained his forklift privileges, while Lee had not.

Lee submitted a third complaint to human resources in May 2018. In this complaint, he asserted that he was written up twice in one week for unsubstantiated violations and that one of his supervisors continually harassed him. He also reasserted his complaint that his forklift privileges had not yet been reinstated, claiming that Dana's policy was to terminate all disciplinary actions after one calendar year. Lee further alleged that he was denied job opportunities for which he was qualified in favor of employees with less seniority. Lastly, he claimed that his pay had declined and that his supervisors overlooked him when assigning overtime shifts. The following

month, he spoke with a human-resources associate, asserting again that less-qualified employees received job opportunities that he did not and that his supervisors were not giving him overtime shifts.

Diane Ricevuto, who worked in Dana's human-resources department at the time of Lee's complaints, testified that she investigated Lee's complaints of harassment and determined that none had merit. Ricevuto stated that when she received complaints of harassment, she reviewed video evidence of the alleged incidents and interviewed the supervisors who were allegedly involved.

Dana has an attendance policy under which employees accumulate points for attendance infractions and employees with three points receive a three-day suspension. Lee received a point for missing a mandatory overtime shift on August 16, 2018. Because this was Lee's third attendance point, he received a three-day suspension. Lee later received back pay for this suspension because one of his other attendance points was given in error.

In September 2018, Dana's human-resources department agreed to lift Lee's suspension from driving forklifts and allow him to apply for open material-handler positions if he signed a form affirming his understanding of Dana's safety rules and willingness to comply with them. The form stated, "The parties understand that this is a non-precedent and non-prejudice settlement." (R. 19-12, 2nd Level Grievance Response, PID 348). Lee refused to sign the form and therefore continued to be barred from operating a forklift. He testified that he did not sign the form because Ricevuto had explained that signing the form would settle all his complaints and grievances. Ricevuto stated in an email that she "tried to explain to [Lee] that the [form] was not meant as an . . . agreement, but, more of a discussion and reminder of the company's position with respect to safety rules and the operation of heavy mobile equipment." (R. 19-13, Human Resources Email,

PID 349). In November 2018, after "the union and Ant Lee pushed the issue," Dana agreed to lift the forklift prohibition without Lee signing the form, reasoning that two years had passed since Lee's last forklift accident. (R. 21-1, Ricevuto Deposition, PID 453).

Later in November, Lee's supervisors informed Ricevuto that they wished to terminate Lee's employment, citing an incident in which he was missing from the production line for twenty minutes, a harassment complaint against him from another employee, and two incidents in which he failed to work assigned overtime shifts. In a November 13, 2018 email to her coworkers regarding Lee's termination, Ricevuto stated, "We have reason to believe that Ant Lee is preparing a discrimination claim against Dana[.] He recently requested a copy of his file[.]" (R. 19-20, Termination Emails, PID 361). On November 15, 2018, Ricevuto stated in an email that human resources had suspended Lee pending further review of his supervisors' reports. About two weeks later, Dana terminated Lee's employment, citing five instances in which he arrived late or left early during mandatory overtime shifts.

On May 21, 2020, Lee filed this action alleging retaliation and race-based discrimination and harassment in violation of Title VII, 42 U.S.C. § 2000e *et seq.*; retaliation and race-based discrimination in violation of the Michigan Elliot-Larsen Civil Rights Act (ELCRA), Mich. Comp. L. § 37.2101 *et seq.*; and wrongful discharge in violation of Michigan public policy. Dana moved for summary judgment, and the district court granted the motion.

## II.

We review the district court's grant of summary judgment de novo. *Lowe v. Walbro LLC*, 972 F.3d 827, 831 (6th Cir. 2020). Summary judgment is appropriate if there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists "if the evidence is such that a reasonable jury

could return a verdict for the nonmoving party." *Saunders v. Ford Motor Co.*, 879 F.3d 742, 748 (6th Cir. 2018) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The moving party bears the burden of demonstrating that there is no genuine dispute of material fact. *Id.* Because Lee is the non-moving party, we must accept his evidence as true and draw all reasonable inferences in his favor. *Logan v. Denny's, Inc.*, 259 F.3d 558, 566 (6th Cir. 2001).

**A.**

Lee asserts that the district court erred in granting Dana summary judgment on his Title VII and ELCRA retaliation claims. To make a prima facie showing of retaliation under Title VII, an employee must show "(1) he . . . engaged in protected activity, (2) the employer knew of the exercise of the protected right, (3) an adverse employment action was subsequently taken against the employee, and (4) there was a causal connection between the protected activity and the adverse employment action." *Niswander v. Cincinnati Ins.*, 529 F.3d 714, 720 (6th Cir. 2008). The burden then shifts to the employer to articulate a "legitimate, nondiscriminatory reason for its actions." *Imwalle v. Reliance Med. Prods., Inc.*, 515 F.3d 531, 544 (6th Cir. 2008). If the employer meets this burden, the employee must demonstrate that the employer's stated reason "was a pretext designed to mask retaliation." *Id.* A plaintiff can demonstrate pretext by showing that "(1) the employer's stated reason for terminating the employee has no basis in fact, (2) the reason offered for terminating the employee was not the actual reason for the termination, or (3) the reason offered was insufficient to explain the employer's action." *Id.* at 545. For retaliation claims under ELCRA, "the plaintiff must show that his participation in activity protected by the [EL]CRA was a significant factor in the employer's adverse employment action, not just that there was a causal link between the two." *Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 523 n.2 (6th Cir. 2008) (citation and internal quotation marks omitted).

The district court determined that Lee's retaliation claim failed on the causation prong. At the time of his termination, Lee had not filed an Equal Employment Opportunity Commission (EEOC) charge or a lawsuit, but he argues that Dana engaged in "preemptive retaliation" by firing him when Ricevuto believed he was preparing to file a claim. (Appellant Br., 21 (citation omitted)). This court has held that "the instigation of proceedings leading to the filing of a complaint or a charge, including a visit to a government agency to inquire about filing a charge" constitutes protected activity. *Booker v. Brown & Williamson Tobacco Co.*, 879 F.2d 1304, 1313 (6th Cir. 1989) (internal quotation marks and citation omitted). Assuming arguendo that Lee's conduct would fall within *Booker*'s reach, his retaliation claims fail nonetheless because he has not demonstrated a causal connection between his preparation for filing a claim and his termination.

Lee contends that in his fifteen years of employment with Dana, he "never accumulated enough attendance points to justify termination" and "had never been accused of harassment" until Dana believed he was preparing to file a discrimination complaint. (Appellant Br., 24). Although this court has determined that "a disparity in the amount of disciplinary action [before and after protected activity] may certainly be sufficient in appropriate cases to support an inference of retaliation," it stated that such a disparity was not sufficient when there was "no evidence directly linking the . . . citations at issue" to the plaintiff's protected conduct. *Cooper v. City of N. Olmsted*, 795 F.2d 1265, 1272 (6th Cir. 1986).

Here, there is no evidence "directly linking" the allegations against Lee to his preparation for filing a lawsuit. In the email in which Ricevuto mentioned a potential discrimination claim, she also stated that she had confirmed that Lee's supervisors "wish[ed] to move forward with termination" and referred to the incidents Lee's supervisors had reported that led to his

termination—"Missing from Line for 20 minutes and impacting production"; "Harassment complaint . . . against Ant Lee"; "missing [overtime] on 11/7"; and "missing [overtime] on 11/8." (R. 19-20, PID 361). This email in no way suggests that Dana was planning to terminate Lee's employment because he was preparing to file a discrimination claim. Rather, it acknowledges Lee's apparent plan to file a lawsuit and indicates that Ricevuto was considering how to protect Dana following Lee's termination—Ricevuto stated, "The question is, what is the best way to handle this case so that termination sticks." (*Id.*)

Lee also notes that the allegation of harassment, the reprimand for being away from his workstation, and the accumulation of two attendance points occurred within about a month after he requested his personnel file. But "the fact of temporal proximity alone [is] not particularly compelling" when "the plaintiff's retaliation case was otherwise weak" and "there was substantial evidence supporting the defendant's version of the events." *Nguyen v. City of Cleveland*, 229 F.3d 559, 567 (6th Cir. 2000). *Compare Donald v. Sybra, Inc.*, 667 F.3d 757, 763 (6th Cir. 2012) (finding that temporal proximity combined with one comment containing "no subtext of animus" was insufficient to establish pretext), *with Imwalle*, 515 F.3d at 542, 550 (finding evidence supporting retaliation when temporal proximity was coupled with the plaintiff experiencing a "retaliatory atmosphere" following his complaints and the plaintiff's supervisor disputing his claims during a meeting), *and Hubbell v. FedEx SmartPost, Inc.*, 933 F.3d 558, 570 (6th Cir. 2019) (finding evidence supporting retaliation when there was temporal proximity and the plaintiff "presented testimony from fellow employees that she was singled out for adverse treatment and presented undisputed evidence, such as doctor's notes excusing her absences, that at least some of her disciplinary writeups were unjustified").

Lee asserts that Dana incorrectly assigned overtime shifts to him, rather than to a temporary employee, and then used his failure to work these shifts as a pretext to fire him. But one of the Dana employees involved in the decision to fire Lee stated in an email that "even if the schedule was wrong, he can't just refuse to work. He knows the process, file a grievance." (R 19-20, PID 360). And Lee has presented no evidence that Dana's account of his actions or how they violated its rules is false. This case therefore differs from *Jackson v. Genesee Cnty. Rd. Comm'n*, 999 F.3d 333, 351–52 (6th Cir. 2021), in which this court found sufficient evidence of pretext to avoid summary judgment when the defendant purportedly fired the plaintiff because of her "difficult communication style," but some employees "reported having good working relationships with [the plaintiff]" and "several of the . . . employees who complained about [the plaintiff]'s communication style also complained about [the plaintiff]'s protected activities." *See also Weatherford U.S., L.P. v. U.S. Dep't of Lab., Admin. Bd.*, 68 F.4th 1030, 1041 (6th Cir. 2023) (finding sufficient evidence supporting administrative finding of pretext when "[the defendant]'s rationale for [the plaintiff]'s termination . . . was inconsistent").

Accordingly, the district court did not err in granting summary judgment in favor of Dana on Lee's retaliation claims.

**B.**

Lee also contends that the district court erred in dismissing his claim for wrongful discharge in violation of Michigan public policy. The Michigan Supreme Court has determined that "some grounds for discharging an employee are so contrary to public policy as to be actionable." *Landin v. Healthsource Saginaw, Inc.*, 854 N.W.2d 152, 158 (Mich. Ct. App. 2014) (quoting *Suchodolski v. Mich. Consol. Gas Co.*, 316 N.W.2d 710, 711 (Mich. 1982) (per curiam)).

Lee argues that "Dana violated Michigan public policy because it retaliated and ultimately fired Mr. Lee for refusing to enter into a settlement agreement to waive his complaints and grievances in exchange for his right to work and apply for a Material Tech position." (Appellant Br., 26–27). Regardless whether this action would constitute a discharge in violation of public policy under Michigan Supreme Court precedent, this claim fails because Lee has presented no evidence that his refusal to sign the relevant form contributed to his firing. This form was not mentioned in the emails regarding Dana's plans to fire him, and Lee has not otherwise supported this allegation.

Accordingly, the district court correctly granted summary judgment on Lee's claim for wrongful discharge in violation of public policy.

## C.

Lee next asserts that the district court erred in dismissing his racial-discrimination claims. In order to establish a prima facie case of racial discrimination, a plaintiff must show that "(1) he is a member of a protected class; (2) he was qualified for his job; (3) he suffered an adverse employment decision; and (4) he was replaced by a person outside the protected class or treated differently than similarly situated non-protected employees." *White v. Baxter Healthcare Corp.*, 533 F.3d 381, 391 (6th Cir. 2008). If the plaintiff makes this showing, the burden shifts to the defendant to provide a "legitimate, non-discriminatory reason for the adverse employment action." *Id.* If the defendant meets this burden, the plaintiff must then demonstrate that the reason provided was "merely a pretext for discrimination." *Id.* at 391–92.

Lee argues that he has demonstrated disparate treatment by showing that one of his supervisors disciplined him for an attendance infraction but failed to discipline a white employee who committed the same infraction, another supervisor gave a white employee "preferential

treatment," and an all-white hiring panel refused to select him to be a Team Lead. (Appellant Br., 30).

Lee testified that when he and a white coworker each missed a mandatory overtime shift on August 16, 2018, he received a disciplinary point, while his coworker did not. Dana conceded that this event took place but asserted that Lee received the point because of a clerical error that was corrected after Lee filed a grievance. But because Lee erroneously stated in his grievance that he received the point on August 15th, rather than August 16th, the error was not resolved at that time. Nonetheless, one of Lee's attendance sheets has handwritten Xs next to the August 16th point, a point from April 3rd that Dana had found to be erroneous, and a point from August 6th with the words "no write-up" written next to it. And the August 16th point was eventually removed from his attendance record. This evidence supports Dana's explanation that the point was given by mistake. And Lee has presented no evidence that Dana's explanation is false. *See Blair v. Henry Filters, Inc.*, 505 F.3d 517, 532 (6th Cir. 2007) ("Generally, to show pretext, a plaintiff must demonstrate that the proffered reason [for the defendant's action] (1) has no basis in fact, (2) did not actually motivate the defendant's challenged conduct, or (3) was insufficient to warrant the challenged conduct." (citation and internal quotation marks omitted)). Thus, this event does not support Lee's racial-discrimination claim.

Turning to Lee's argument that one of his supervisors gave a white employee "preferential treatment," (Appellant Br., 30), Lee complained in his deposition that this employee was allowed to drive a forklift when he was not certified to do so, while Lee remained barred from driving the forklift. But Lee fails to demonstrate that he and this employee were "similarly situated." *White*, 533 F.3d at 391. Lee was barred from operating a forklift after being involved in three forklift

accidents. The record does not indicate that the white employee he identifies as a comparator had a similar record of accidents.

The hiring panel's refusal to make Lee a Team Lead also fails to demonstrate racial discrimination. To be eligible for a Team Lead position, employees were required to have no disciplinary action on their record and two or fewer attendance points. According to data on Dana's computer system, Lee did not meet either of these prerequisites when he applied for the Team Lead positions. And he has provided no evidence that white employees lacking these qualifications were hired as Team Leads or that these requirements were pretextual. The remainder of Lee's complaints of unequal treatment involved other Black employees and therefore do not constitute evidence of racial discrimination.

Accordingly, the district court properly dismissed Lee's racial-discrimination claims.

**D.**

Lee next contends that the district court erred in dismissing his hostile-work-environment claim. To prevail on this claim, Lee must establish (1) he "belonged to a protected group," (2) he "was subject to unwelcome harassment," (3) "the harassment was based on race," (4) "the harassment was sufficiently severe or pervasive to alter the conditions of employment and create an abusive working environment," and (5) "[Dana] knew or should have known about the harassment and failed to act." *Williams v. CSX Transp. Co.*, 643 F.3d 502, 511 (6th Cir. 2011).

In support of this claim, Lee asserts that his white supervisors "retaliate[d] against him, causing him to lose money"; a white supervisor spoke to him in an "unprofessional, harassing and discriminatory" tone; and his supervisors gave two white employees "preferential treatment." (Appellant Br., 31). Although Lee has presented no evidence of explicitly race-based harassment, "[c]onduct that is not explicitly race-based may be illegally race-based and properly considered in

a hostile-work-environment analysis when it can be shown that but for the employee's race, [he] would not have been the object of harassment." *Clay v. United Parcel Serv., Inc.*, 501 F.3d 695, 706 (6th Cir. 2007). But Lee has failed to demonstrate that any of the incidents he cites occurred because of his race.

One of the white employees Lee claims received preferential treatment is the same employee who Lee complained was permitted to drive a forklift when Lee was not. The other white employee Lee claims was given preferential treatment is the employee who was awarded a Team Lead position for which Lee had applied in June 2018. As explained, Lee was temporarily barred from driving a forklift because of his history of accidents, and he did not qualify for the Team Lead position because of his discipline and attendance record. Lee also once complained that one of these white employees worked 16-hour shifts, while Lee was not permitted to do so. But the supervisor responsible for approving Lee's shift told him that someone else had approved the other employee's shift and that 16-hour shifts were against company policy. Further, although Lee asserts that his supervisors caused him to lose wages through dysfunctional overtime scheduling, he has not demonstrated that his supervisors favored white employees for overtime shifts. Nor has he shown that the supervisor who allegedly spoke to him in a harassing tone spoke to him differently from white employees.

For these reasons, the district court properly granted summary judgment on Lee's racial-harassment claim.

### III.

For the reasons set out above, we AFFIRM.